# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Macauley's Estate.

*Will—Issue devisavit vel non—Testamentary capacity—Undue influence—Evidence—Refusal of issue.*

On an application for an issue devisavit vel non it appeared that testator was a man addicted to drink, and at times became intoxicated. Some years before the making of the will in controversy, he had been placed in a lunatic asylum, but was subsequently released on a lunacy commission declaring him sane. Afterwards on account of his habits he voluntarily went into a hospital where he stayed until his death sixteen years afterwards. Ten years before his death he signed the will giving the bulk of his fortune to the hospital. At this time all of his immediate family were dead, and his only relatives were certain cousins with whom he had little to do. His affairs were in the hands of a friend whom he made substituted residuary legatee in case of his death within a calendar month. This friend supported by the testator directed that certain cousins who were begging him for money should not be admitted to the hospital. There was no evidence that any officer of the institution had anything to do with the making of the will. It was prepared by a reputable lawyer, and witnessed by a friend and a temporary resident physician. The uncontradicted evidence showed that testator at the time of the making of the will was in full control of his faculties and able to attend to his affairs, although occasionally under the influence of liquor. The testator took great interest in the hospital, its officers and patients, and contributed considerable sums of money for appliances useful for the patients. *Held*, that an issue was properly refused.

Argued Jan. 13, 1909.  Appeal, No. 245, Jan. T., 1908, by Julia M. Edie, from decree of O. C. Phila. Co., Jan. T., 1907, No. 414, refusing an issue devisavit vel non in Estate of Joseph Tagert Macauley, deceased.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Petition for an issue devisavit vel non.

ANDERSON, J., filed the following opinion:

The facts in this case briefly are these: Joseph Tagert Macauley, the testator, was a man of means, who was afflicted with an uncontrollable desire for drinking, and, when subject to temptation, became intoxicated.  Recognizing this weakness on his part, it was his habit, when living with his family, in order to overcome this desire, to stay in his home for months at a time.  Owing to some outbreak, not traceable to his drinking habits, about the year 1888, some of his family had him placed in an insane asylum, where he stayed for about two years; but having been consulted by a lawyer about signing a deed for some property, the lawyer became convinced of his sanity, and had the question raised by means of a lunacy commission, which, after hearing the case, declared him sane, and he was thereupon released from the asylum.  After his release he stopped at the Continental Hotel for a short time, and on account of his habits was taken from there and sent to St. Agnes' Hospital.  This was some time in 1890, and he remained there until his death in 1906.  During this time he was out of the hospital but a few times, in the earlier years, coming back to it of his own volition.  During his stay there, all of his immediate family had died; and the only persons who visited him constantly was one Gordon Monges and his wife.  Mr. Monges, who had known the testator from youth, was connected with him by marriage, but was not of his kin.

In 1896, the testator signed the will in controversy, by which he gave the bulk of his fortune to the St. Agnes' Hospital, making Mr. Monges the substituted residuary devisee and legatee in case of his death within the calendar month.  Mr.

Monges was also appointed executor of the will. The will was drawn by Edward P. Allinson, Esq., who, it was stated in the answer, drew it from one which had been dictated to him by the testator. It was given by Mr. Allinson to Mr. Monges, who, accompanied by a clerk in Mr. Allinson's office, took it to the hospital, and it was there executed, the clerk, N. L. Bright, and Dr. Harry S. Greenleaf, one of the physicians at the hospital, witnessing it. It was signed and witnessed in the presence of Mr. Monges. There was no testimony to show that the authorities of the hospital, except the doctor who witnessed the will, who was but a temporary resident, and is now out of the country, knew anything of its contents. The testator left, as his next of kin, five cousins, three living in Washington, D. C., and two living in Philadelphia. The will having been admitted to probate, an appeal was taken to this court by Julia M. Edie, one of the cousins living in Washington, on the ground that the testator was of unsound mind, and that he was unduly influenced.

The testimony in support of the first contention turned almost wholly on testator's condition long anterior to the making of the will; that is, about the time he was confined in the insane asylum. At best, it is exceedingly meager; and, as a commission at that time had found the testator of sound mind, the presumption that might have arisen as to his condition prior thereto, on account of his having been in an asylum, has been counterbalanced.

The only testimony on this point subsequent thereto was that of the lawyer who had represented him at the lunacy proceedings, and he stated that his mind, when he visited him at the hospital, was occasionally clouded as the result of drinking. He had not, however, visited him within three or four years of the making of the will.

Against this was the testimony of Mrs. Monges, who visited testator frequently with her husband in the last eleven years of his life, and of the attendants at the hospital, of the physicians there, and of the sergeant of police, who went there in the performance of his duty. All of these witnesses testified that he was a clear-headed man of much information. In ad-.

dition to that, it was shown that, during all these years, he paid his bills by checks upon his deposits in banks, which were kept in his name, though the deposits were made for him by Mr. Monges. It was shown that he occasionally got liquor at the hospital, either by order of the doctors or from visitors who came there. It was also shown that within the last ten years he had sent a letter to Dallas Sanders, Esq., a prominent member of our bar, now deceased, recalling himself to him and requesting him to call about some urgent legal business; and that Mr. Sanders being busy, sent down an assistant, a Mr. Wilkinson, who was denied admission to the testator, on the ground that he was in no condition to be seen; the person in charge also stating that they had had such letters before. It was shown that Mrs. Edie had written to him for assistance, but got no answer from him. She testified also that her son had called on him many times, until he was refused permission to see him by the sisters. Mrs. Monges explained this refusal, saying that the testator had given positive orders not to admit Mr. Edie, as he wanted to borrow money from him.

There is, in the opinion of the auditing judge, no evidence sufficient to support a verdict on the ground of mental unsoundness. That the testator had an uncontrollable desire for drink, there is no doubt; and that, when the opportunity came, he became intoxicated is clearly shown from the evidence; but, being kept from it, as he was in the hospital, it is plain that he was only occasionally so affected, and it is also plain that he was at other times a clear-headed, intelligent man, able to converse sensibly and to attend to his affairs. From the testimony of the witness who subscribed the will, it is evident that, at the time of its execution, he was not under any such influence, but sober and intelligent. Mr. Monges and Mr. Allinson both being dead, and Dr. Greenleaf being out of the country, we are confined to the testimony of Mr. Bright, who was a disinterested witness. Indeed, the character of the lawyer who drew the will, the late Edward P. Allinson, Esq., would of itself rebut any presumption of its being the will of a man unable to intelligently comprehend its provisions. Drunkenness, unless it occurs at the time of the making of a testa-

mentary paper, is no proof of mental unsoundness: Schusler's Estate, 198 Pa., 81. The issue on the ground of mental unsoundness must be refused.

Nor is there any proof of undue influence. Such influence must be that which operates on the mind of the testator, forcing him to do the will of the person so exercising it, and must be exercised at or prior to the time of the execution of the paper. There was testimony that the authorities of the hospital did not permit the testator to go out of the grounds; but that was for his benefit alone. There was testimony that they had prevented Mr. Wilkinson from seeing him; but that was some years after the will was executed. There was testimony that they acted under the order of Mr. Monges, who attended to his business affairs outside, and that Mr. Monges was active in having the will executed, and was substitutionary legatee thereunder by the clause put in wills so often for the obvious purpose of overcoming the statute avoiding gifts to charities within a calendar month of the death of the testator; but, as Mr. Monges' interest under the will fell a calendar month after the making of it, and ten years before the testator's death, no question can now be raised as to his reaping a benefit from it; and certainly there is no evidence that either he or the officers of the hospital by any influence, good or malign, induced the testator to make his will in favor of the hospital. As shown by the answer, the testator's lawyer, executor and witnesses were all of a different religious belief from those who conducted this hospital, and there is not a scintilla of evidence that they induced the testator to make his will the way he did.

The will, indeed, is a most natural one. This man, for his own good, spent the last sixteen years of his life at this institution, where he had the constant care and companionship of its personnel; took active interest in its officers and its patients; was always on hand at the reception of new patients; built, at his own expense, a shed for the ambulance; put up awnings for the patients; provided a sterilizer, and in all ways took an active personal interest in its affairs, and being able to pay, no doubt had every want attended to. He knew the restraint on his actions was a kindly one, and for his benefit, as it was in

course with his own conduct years before. His parents, brother, and all his immediate family were dead. His cousins in Philadelphia did not bother about him, his cousins in Washington only when in need of assistance. His friends, the Monges, evidently did not seek his money, and probably did not need it. What more natural than that he should give it to that charity, the needs of which he knew, and the good it did he saw around him day by day? He knew this hospital had grown out of the conception of the good it might do, in the mind of a testator; and he, who knew it in its activities, its wants and necessities, especially the need of enlargement, felt that his money would be best spent and bring its greatest blessing, if devoted to the purposes of this benefaction. It might well be that, had he seen the need of his afflicted relative as he saw that of those around him he would have been more considerate to her in his will; but however that might be, he made this will when of sound mind, and uninfluenced by the beneficiaries, and, as far as the testimony shows, without undue influence by anybody. The issue prayed for must therefore be refused.

Issue refused.

*Error assigned* was decree refusing an issue devisavit vel non.

*J. Howard Gendell*, with him *I. Irwin Jackson* and *John C. Grady*, for appellant.—An issue should have been awarded: Boyd v. Boyd, 66 Pa. 283; Cuthbertson's App., 97 Pa. 163; Yardley v. Cuthbertson, 108 Pa. 395; Murdy's App., 123 Pa. 464; Herster v. Herster, 116 Pa. 612; Dean v. Negley, 41 Pa. 312; Reichenbach v. Ruddach, 127 Pa. 564.

*Theodore F. Jenkins* and *John G. Johnson*, with them *J. Peter Klinges*, for appellee.

PER CURIAM, March 8, 1909:

The order of the orphans' court refusing an issue is affirmed on the opinion of Judge ANDERSON.