Commonwealth ex rel. Bankert et al., Appellants, *v.* Children's Services.

*Peter J. Mangan,* with him *Griest & Mangan,* for appellants.

*Robert M. Strickler,* Solicitor, for appellee.

OPINION BY HOFFMAN, J., June 14, 1973:

This is an appeal from the order of the Court of Common Pleas, York County awarding custody of a minor child, Charlene Brandt, to appellee Child Services. Appellants contend that the evidence was insufficient to justify the custody order. We agree.

Charlene was born on August 18, 1963 and immediately placed by her natural parents in the custody of the Harrisburg Catholic Charities. On September 11, 1963, the three week old infant was placed in the care and custody of appellants as foster parents. On that same date, appellants and Catholic Charities entered into a foster parent agreement which provided, inter alia, that the Catholic Charities organization would alone decide what would promote the best interests of the child, that the placement of the child was temporary, and that the foster parents would take no steps to obtain legal custody of the child or adopt her. The agreement was subsequently transferred to Children's Services, appellee herein. In 1972 appellee demanded that

Charlene be surrendered to its custody for placement in a different foster home. Appellants refused and this action followed.

From the time of her initial placement with appellants to the present, a period of over nine years, the child has remained in the exclusive care and custody of appellants. She has been raised as a Catholic, attends church regularly with appellants, and is enrolled in a Catholic school. The testimony indicated that Charlene's progress in school is normal, and her orientation and adjustment to school good. Charlene stated that she enjoys both the church and school.

Charlene testified[1] that she is treated well by appellants, gets along well with them, and had no complaints about them. In her testimony, she referred to appellants as her mother and dad, and stated that she wished to remain with them.

The foster parents, Ivan and Nadine Bankert, have been married since 1952, and had one child who has married and no longer lives with them. Mr. Bankert is forty-three years old, employed as a print handler, and has a net weekly income of $120.00 which, he stated, is adequate to support his wife and Charlene. Mrs. Bankert is 39 years old and not employed. Both appellants testified that their marital relationship was good, and that, despite an occasional argument, they got

---

[1] Charlene's testimony was given in open court and was limited to direct examination by counsel. To avoid the inhibiting effect of testifying in open court, in the presence of the contending parties, the better practice would be to hold an *in camera* hearing with a stenographer to record the child's testimony. See *Commonwealth ex rel. Morales v. Morales*, 222 Pa. Superior Ct. 373, 294 A. 2d 782 (1972) ; *Commonwealth ex rel. Bowser v. Bowser*, 224 Pa. Superior Ct. 1, 302 A. 2d 450 (1973). The inhibiting effect of counsel's presence should also be considered by the trial judge in arranging such a hearing. See *Snellgrose Adoption Case*, 432 Pa. 158, 247 A. 2d 596 (1968) (Concurring opinion).

along well. They testified that they wish to keep custody of Charlene and to ultimately adopt her.

Appellee called its employee, Mrs. Bonnie Sponsellor, a child welfare worker assigned to Charlene's case, to testify as to her contacts with Charlene and the Bankerts. As of the October, 1972 hearing date, she had been employed as a child welfare worker for 11 months. Her first contact with Charlene and the Bankerts at their home was in January of 1972. She subsequently made visits there on four occasions—in February, March, June and September. Two visits were made with Charlene and her teacher at Charlene's school.

Mrs. Sponsellor testified that Charlene *"appeared to be"* a nervous and jittery child, *"as if"* she was under a great deal of tension at home", and it was her *"impression"* that the atmosphere at the Bankert home was detrimental to Charlene's emotional well-being. (Emphasis supplied). On cross-examination, she testified that Charlene appeared to have a good ability to handle contacts with people on the surface, but she was inwardly a very nervous child.

The case worker stated that the Bankert home was well-kept and clean, and that Charlene was well groomed. Charlene's teacher reported that her progress in school was good, that she got along with classmates, and that her orientation and adjustment to school was excellent. The only behavior which Mrs. Sponsellor could specify as indicative of Charlene's lack of maturity and adjustment was her stubborn reluctance to leave the room when Mrs. Sponsellor wished to confer in private with the Bankerts.

Mrs. Sponsellor testified that Mrs. Bankert appeared on two occasions to be very tense and had a rash which resulted from nervousness. Mrs. Bankert admitted she was nervous on these occasions, but attributed it to the

conditions at their old residence, and the trouble they were having with their neighbors. Since moving to their present home, Mrs. Bankert stated that the nervousness and the rash have not recurred.

Based on these contacts and observations, Mrs. Sponsellor concluded that Charlene's best interests required her removal from the custody of the Bankerts. The case was reviewed by the supervisors of Children's Services, and the case worker's conclusions were approved. If the child is removed from her present home, Children's Services plans to place the child in a Protestant home and enroll her in a public school.

At the conclusion of the hearing, the trial judge entered an order granting custody to Children's Services. He emphasized that the order was based on the foster home agreement which vested discretion in the organization to determine the child's best interests. A written opinion was later filed pursuant to Superior Court Rule 46. In the opinion the trial judge states that the order was based on his determination that allowing continued custody to the appellants would not be in the child's best interests. He further states that his decision was based not on the foster home agreement, but rather on the recommendations of Children's Services as to the child's best interests.

Initially, we note that any reliance by the trial court upon the foster home agreement as determinative of the issue of custody was erroneous. In passing upon this issue, our Supreme Court has held that ". . . contracts as to the custody of children are voidable agreements . . . and are subject to being set aside by the courts in the best interests of the child . . . . That a child cannot be made the subject of a contract with the same force and effect as if it were a mere chattel has long been established law." *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 92, 66 A. 2d 300 (1949).

In *Gard,* the Society had placed a child in the home of the Gards pursuant to a foster home agreement with provisions similar in all respects to those involved herein. After four years of care and custody by the Gards, the Society demanded return of the child which the Gards refused. In reversing the lower court which had ordered the child returned to the Society on the basis of the agreement, the Supreme Court held that such cases are not to be decided upon a claim of right by the guardian, "but upon the court's view of the best interests of those whose welfare requires that they be in the custody of one person or another; and hence a court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of sound judicial discretion after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require." *Commonwealth ex rel. Children's Aid Society v. Gard,* supra, at p. 94. The determination of custody in the instant case should, therefore, focus upon the best interests of the child, and not upon any claim of right by appellee.

Although the trial judge purported to decide the issue on this basis, upon a full review of the record of this case, we are not satisfied that the order of custody is justified by the facts of this case.

Of extreme significance in this conclusion is the fact that Charlene has been in the care and custody of appellants throughout her development from an infant of three weeks to a child of nine years. After such a period of time, a child "becomes strongly attached to those who stand in parental relationship to it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury. . . . Nothing could be more cruel than the forceable separation of

a child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection." *Commonwealth ex rel. Children's Aid Society v. Gard,* supra, at 97. "The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations, incident to the only parental control and supervision it has ever known could have a very harmful effect upon the child's whole life." *Davies Adoption Case,* 353 Pa. 579, 588, 46 A. 2d 252 (1946). These factors are especially strong in this case in which the child considers the appellants her parents. The continuous custody of Charlene with appellants for all but the first three weeks of her life, and the emotionally devastating effects which could result from a forced separation are matters which should be seriously weighed in determining the child's best interests.

Similarly, the disruption of Charlene's religious and educational development could be highly damaging to the child and should be a matter of serious concern in a determination of custody. *Commonwealth ex rel. McDonald v. McDonald,* 183 Pa. Superior Ct. 411, 132 A. 2d 710 (1957).

The lower court's determination, moreover, does not take into account the preference expressed by Charlene to continue living with the appellants. The weight to be accorded to a child's preference will vary according to the age, intelligence, and maturity of the child. *Commonwealth ex rel. Bender v. Bender,* 197 Pa. Superior Ct. 397, 178 A. 2d 779 (1962); *Commonwealth ex rel. Bowser v. Bowser,* 224 Pa. 1, 302 A. 2d 450 (1973). Although the child's preference is not controlling, it is a factor which should be carefully considered. *Commonwealth ex rel. McDonald v. McDonald,* supra, at 416.

As the trial judge stated in his opinion, his determination of the child's best interests was based largely upon the case worker's testimony. While this testimony cannot be ignored, her conclusion that Charlene's best interests require removal was, as previously discussed, grounded upon appearances and impressions, rather than behavior on the part of Charlene or the appellants that would indicate the need for removal and the disruption of Charlene's life.

Except for an occasional argument and Mrs. Bankert's past nervousness, the record does not reveal any significant personal facts, incidents, or patterns of behavior that would support a conclusion that the appellants are unfit custodians for Charlene, there is nothing to indicate that the appellants have neglected Charlene, or that they have failed to provide a proper environment for her development.

Given the deficiencies of this record, however, we are not convinced that a permanent award of custody to appellants would be appropriate at this time. Specifically, the abbreviated in-court examination of Charlene, the failure to call other witnesses who have had contact with Charlene and the Bankerts (e.g., teachers, neighbors, clergy), and the failure to specify the factual basis for appellee's determination of the need for removal are deficiencies which require us to stay our hand until these matters can be fully explored in light of the considerations discussed herein.

The order of the lower court is, therefore, reversed, and the case remanded for proceedings consistent with this opinion.