PHILIP SORENTINO AND CONSTANCE SEVERINI, PLAINTIFFS-RESPONDENTS, v. THE FAMILY AND CHILDREN'S SOCIETY OF ELIZABETH, JOHN DOE AND JANE DOE, DEFENDANTS-APPELLANTS.

Argued May 25, 1976—Decided December 17, 1976.

*Mr. Harry Kay* argued the cause for defendants-appellants John and Jane Doe.

*Mrs. Rosemary Higgins Cass* argued the cause for defendant-appellant The Family and Children's Society of Elizabeth (*Messrs. Brown, Cass and Connolly,* attorneys).

*Mr. Martin L. Mintz* argued the cause for plaintiffs' respondents (*Mr. Walter S. Pryga,* attorney).

PER CURIAM. This appeal involves the right of an unwed mother, who surrendered her newborn child for placement for adoption under undue pressure by an adoption agency, to regain custody of the child. Also implicated are the rights of the natural father, who has since married the mother; the prospective adopting parents, who have had custody of the child since July 9, 1974; and, of great importance to the Court, the well-being of the child herself.

The mother, then aged 16, gave birth to the child May 5, 1974. The natural father, then 18, being unwilling to marry her, and the maternal grandmother being unwilling to maintain the girl and the child in her home in those circumstances, the mother surrendered the child for temporary foster care to the defendant agency on May 30, 1974. This arrangement was for a thirty-day period, at the end of which the mother was either to take the child back or surrender it for adoption.

At then end of the thirty-day period, on June 28, 1974, the mother had decided to retain her child. When she so informed an agency representative by telephone, the agency supervisor required her to come to the agency at once with her mother. The Chancery Division judge made a finding of fact that on arrival the girl told the agency representatives she wished to keep her child. He also found that as a result of ensuing unwarranted pressures exerted by the supervisor on the girl when she came there with her parents, of threats of harassment and litigation by him, and of his failure to inform her of options for care of the child other than an immediate choice either of irrevocable surrender for adoption or return of the child, she was coerced within a half-hour or so into signing a surrender of the child for adoption. The Appellate Division affirmed a judgment for plaintiffs based on these findings of fact, and we are unable to say that they are not sufficiently supported by the evidence.

The natural father, who learned on June 30, 1974 of the surrender of the child, apparently went to the agency in July and told a representative he opposed the surrender and would contest it. He was told that as an unwed father he had no "say-so."

The parents returned to the agency together both in September and December 1974 to request the return of the child, but were refused. They sought counsel in January 1975, but were unfortunately advised to withhold institution of action until the mother attained the age of 18, in

June 1975. The present complaint, for a return of the child, was filed on July 9, 1975, by the parents jointly.

The case was heard and decided in September 1975. In addition to the findings aforestated, the trial judge ruled that the natural father had been denied his constitutional rights when the agency accepted the child without notice to him or affording him an opportunity to state his objections, he being the known and admitted father of the child. He found the plaintiffs fit to take custody and ordered the child transferred to them at once, denying a stay pending appeal. However, the Appellate Division did grant such a stay. That tribunal affirmed in a *per curiam* opinion filed February 9, 1976. This Court ordered a further stay pending consideration of petitions for certification by the defendant agency and the prospective adopting parents. We granted both petitions, 70 *N. J.* 511 (1976), and continued the stay. Thus the child has continued in the custody of the prospective adoptive parents ever since. No formal adoption proceeding has been instituted by them because of a restraint entered in the Chancery Division which has not been vacated.

We consider first the merits of the judgment as it applies to the plaintiff mother. The evidence supports the trial finding of coercion and duress by the agency against the mother. The case of *In re Adoption of a Child by R. D.,* 127 *N. J. Super.* 311 (App. Div.), certif. den., 65 *N. J.* 292 (1974), is factually distinguishable, the court there having found the surrendering mother's decision was "deliberate, long under consideration, and with clear knowledge of its probable consequences." 127 *N. J. Super.* at 314. The circumstances here are markedly different. The trial judge had before him sufficient to conclude that the decision to surrender here was hasty and coerced and was not a voluntary act.

In view of the foregoing adjudicated facts, it cannot be held that *N. J. S. A.* 9:3–19.1, which renders the duly executed written consent by a parent to surrender of a child

for adoption "valid and binding", is effective for purposes of the case. The surrender is a legal nullity. Consequently the plaintiff mother cannot be held to have lost her rights to custody of the child merely because it might be determined that the best interests of the child, in the ordinary sense, would be promoted by the adoption rather than by returning the child to the natural parents.

An analogy in this regard is afforded by the statutory situation discussed in *In re Adoption of Children by D.,* 61 *N. J.* 89, 94 (1972). That case, discussing *N. J. S'. A.* 9:3–24(C), permitting a termination of the right of a parent to custody of a child sought to be adopted if the parent has forsaken parental obligations, held that where the parent had not forsaken obligations, the adoption could not be approved even if in the best interests of the child.

While the prospective adopting parents have a great stake in this matter, their interests are necessarily subordinate to the rights of the natural parents. They have been aware of this litigation from its beginning.

Ordinarily, the foregoing conclusions would call for an affirmance of the judgment of the Appellate Division and an immediate vesting of custody of the child in the natural parents. We are given pause, however, in adjudicating such a summary and drastic change in the life circumstances of this child, now 31 months old. We are confronted with the potentiality of serious psychological injury to the child, in the evaluation of which substantial significance should attach to the length of time the child has been with the prospective adopting parents and to the quality of the developing relationship. See *Commonwealth ex rel. Bankert v. Children's Services,* 224 *Pa. Super.* 556, 307 *A. 2d* 411 (Super. Ct. 1973); Note, "Increasing the Rights of Foster Parents," 36 *U. Pitt. L. Rev.* 715, 723 (1975). Cf. *In re Adoption of a Child by R. D., supra,* 127 *N. J. Super.* at 316; *In re P., and wife,* 114 *N. J. Super.* 584, 593 *et seq.* (App. Div. 1971); Note, "Alternatives to 'Parental Right' in Child Custody Disputes Involving Third Parties," 73 *Yale L. J.* 151, 158 *et*

*seq.* (1963). We are not suggesting that such a potentiality suffices as a matter of law to justify a reversal in this case. However, the potentiality does require a hearing and determination on the issue.

We should first notice the observation of plaintiffs that we have previously held, as noted above, that where a parent has not forsaken or surrendered his parental obligations, he or she cannot be cut off from the child by adoption by another on the basis that "the best interests and welfare" of the child call for such action. *In re Adoption of Children by D., supra,* 61 *N. J.* at 95. The argument is that *a fortiori* the parent cannot be cut off from the child by a void formal surrender, on the basis of the supposed best interests of the child.

However, it should be made clear that we did not in *D., supra,* hold that the right of custody over a child by a non-forsaking parent was necessarily inviolable as against a showing of the probability of serious harm to the child if such custody was awarded. The intent of our holding in *D.* was that a mere demonstration that the child would be better off with the adopting than the natural parent would not warrant a judgment of adoption where the natural parent had not forsaken his obligations to the child. This would also apply when, as here, there is a void formal surrender of custody by a parent.

The court cannot evade its responsibility, as *parens patriae* of all minor children, to preserve them from harm. See *In re P., and wife, supra,* 114 *N. J. Super.* at 591, and cases there cited; *Small v. Rockfeld,* 66 *N. J.* 231, 253–254 (1974) (Conford, P. J. A. D. (temporarily assigned), dissenting on other grounds). The possibility of serious psychological harm to the child in this case transcends all other considerations. The court's responsibility in the matter is not lessened by the circumstance that plaintiffs are not alone responsible for the delay (although this suit was not commenced until 14 months after the infant's birth), for the appeals and stays are at least as direct a contributing cause of the critical situation confronting the child.

For the reasons stated we remand the matter to the Chancery Division for a hearing by February 1, 1977 on the issue of whether transferring the custody of the child to plaintiffs at that time will raise the probability of serious harm to the child. Plaintiffs, who seek to change the status quo and to dislodge the child from the only real home he has known, will have the burden of proving by a preponderance of the credible evidence that the potentiality for serious psychological harm accompanying or resulting from such a move will not become a reality. In its discretion the trial court may call an impartial expert witness to testify at the hearing. Findings of fact and conclusions of law will be rendered within a week of the hearing. In his own interests the trial judge who sat in this matter will not sit on the remand. Any party may notice the matter for review in this court within one week of the rendition of the trial court decision, for which purpose we retain jurisdiction.

We have not dealt with the contention of denial of constitutional rights of the father, as determined by the trial court. Our adoption statute excludes the father of an illegitimate child as a "parent" for all purposes of the act. *N. J. S. A.* 9:2–13(f).[1] Substantial questions exist as to the validity of legislation depriving known or identifiable unwed fathers of notice of proceedings affecting their rights with respect to the children. See *Stanley v. Illinois,* 405 *U. S.* 645, 92 *S. Ct.* 1208, 31 *L. Ed.* 2d 551 (1972) ; but *cf. Orsini v. Blasi,* 423 *U. S.* 1042, 96 *S. Ct.* 765, 46 *L. Ed.* 2d 631 (1976), dismissing for want of a substantial federal question, appeal from 36 *N. Y.* 2d 568, 370 *N. Y. S.* 2d 511, 331 *N. E.* 2d 486 (Ct. App. 1975). We have determined we need not decide such questions in relation to the rights of the plaintiff father as our holding gives him the benefit of the undoing

---

[1]Where a child has been voluntarily surrendered by a parent to an approved agency, upon an application by the agency for termination of parental rights, the father of the child if illegitimate shall be declared to have no right to custody. *N. J. S. A.* 9:2–19.

by the determinations below of the surrender of the child by the mother. As plaintiffs are now married, moreover, the status of the child and father is now one of legitimacy. *N. J. S. A.* 9:15-1. The plaintiff father is thus accorded all those rights in respect of this child which he would have if he were married at the time of the child's birth, subject only to the possibility of divestiture in the event of an adverse determination on the issue we have posed for determination on the remand.

The matter is remanded to the Chancery Division for further proceedings consistent with this opinion. We retain jurisdiction. No costs.

CONFORD, P. J. A. D., Temporarily Assigned, concurring and dissenting. I concur in the entirety of the court's opinion except as to the placement of the burden of proof as to the issue of serious harm to the child on plaintiffs. The primary adjudication by the court is the affirmance of the holdings below that plaintiffs were wrongfully deprived of their child by the defendant agency and that they have a *prima facie* right to restoration of the child. It should therefore be for the agency and the prospective adoptive parents to bear the burden of proof of the probability of serious harm to the child if now transferred to the natural parents.

The factor of the time period during which the child has been with the present custodians is an element which the fact-finder will undoubtedly weigh in arriving at his fact finding; but it is irrelevant to the issue as to where the burden of proof should lie.

Justice Pashman joins in this opinion.

*For remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER—5.

*Concurring and dissenting*—Justice PASHMAN and Judge CONFORD—2.