## T.M.C. v. S.L.C.

*Kenneth D. Hoch,* for plaintiff.
*Arthur K. Dils,* for defendant.

DOWLING, *J.,* December 14, 1984—In this prelude to the ultimate question of custody and visitation of seven-year-old Justin, defendant mother [Mrs. C.] has petitioned the court for an order requiring a blood grouping test to determine the child's paternity.

. Plaintiff-putative father [Mr. C.] originally petitioned for visitation and on the day of the hearing on that matter, the mother requested the HLA Blood Grouping Test. Subsequent to the hearing, Mr. C. filed a complaint for custody. Further hearings on those issues are, in effect, stayed pending our decision on the blood test question.

Justin was born August 16, 1977. The parties dated for approximately two years prior to that and had regular sexual relations during that time. They began living together in June, 1977, married in 1979, separated in January 1982, and eventually were divorced.

At the time of the separation, the mother moved in with the man whom she now alleges is Justin's father.

However, since January 1983, the mother, now 25, has lived with a different paramour, a 17-year-old minor by whom she is presently pregnant. She has not remarried.

From Justin's birth until this past summer, a period of seven years, Mr. C. was acknowledged by all parties as the boy's father. Justin carries plaintiff's surname, and Mr. C. is listed as the father in hospital records, the birth certificate and other documents such as school and church records. None of this has been disputed by the mother; in fact, she testified at the hearing on visitation that Justin accepts Mr. C. as his father.

Despite all this, in July 1984, Mrs. C. suddenly terminated all visitation by plaintiff, claiming he was not the father. For the year and a half between the parties' separation until the unilateral cut-off of visitation, Mr. C. had seen Justin virtually every weekday and provided the child's breakfast and dinner daily because the mother worked at night.

This case is an anomaly in that most of the reported decisions on blood typing involve putative fathers' efforts to disprove paternity in attempts to avoid payment of child support. There is a series of decisions in those types of actions holding that a parent is barred, on an estoppel theory, from raising the issue of paternity after acting as the parent for several years.

Commonwealth ex rel. Gonzalez v. Andreas, 245 Pa.Super. 307, 369 A.2d 416 (1976), involved a time frame quite similar to the instant case. There the parties were married two years after the child's birth and lived together three years after that, during which time the putative father supported the child and executed various documents representing that he was the natural father. A blood test indicated that he was not the natural father, and he then attempted to terminate his child support obligation. The court, however, held he was estopped from taking such action. See also Commonwealth ex rel. Goldman v. Goldman, 199 Pa.Super. 274, 184 A.2d

351 (1962), and Commonwealth ex rel. Weston v. Weston, 201 Pa.Super. 554, 193 A.2d 782 (1963).

Here, Mr. C. has been acknowledged by the parties as Justin's father for seven years, and we can find no justification for ordering a blood grouping test. We therefore rule that Mrs. C. is estopped from raising the paternity issue.

Furthermore, we note that the Uniform Act on Blood Tests to Determine Paternity,[1] the sole authority cited by the mother in support of her request, provides that the blood tests shall be ordered, upon motion of a party, in any matter "in which paternity, parentage or identity of a child is a relevant fact."42 Pa.C.S. §6133. We do not believe Justin's paternity to be a relevant fact for two reasons. First, the evidence showing that Justin has been reared and recognized as Mr. C.'s son is enough to establish paternity. See Finks Estate, 343 Pa.65, 21 A.2d 883 (1941) (existence of the relation of parent and child is a question of fact and is established prima facie when it is shown that the parties lived together and recognized the existence of the relation).

Secondly, even if we assume arguendo that if the blood tests were taken they would indicate Mr. C. is not the father, the ultimate issue of custody and visitation would remain. In our future ruling on that matter the polestar will, of course, be what is in the best interest of Justin. Without here ruling on the merits of those questions, we cannot see how it could be in his best interest to foreclose on the relationship — whether natural or psychological — developed over seven years between this man and this boy. It would seem most detrimental to the child to eliminate all contact with the one person he

---

[1]Act of July 9, 1976, P.L. 586, 42 Pa.C.S. §6131 et seq.

has known as his father his entire life. Yet this is what the mother proposes.

It cannot be argued that the best interests of a child are limited to custodial relationships with a natural parent. Rather, they extend to those who stand in loco parentis with the child. As stated in Commonwealth ex rel. Bankert v. Children's Services, 224 Pa.Super. 556, 561-562, 307 A.2d 411 (1973):

"Nothing could be more cruel than the forceable separation of a child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection. (Citation omitted.) The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations incident to the only parental control and supervision it has ever known could have a very harmful effect upon the child's whole life. (Citation omitted.) These factors are especially strong in this case in which the child considers the appellants her parents. The continuous custody of Charlene with appellants for all but the first three weeks of her life, and the emotionally devastating effects which could result from a forced separation are matters which should be seriously weighed in determining the child's best interests."
Regardless of whether plaintiff is the natural father, he appears to have a prima facie case, at least for visitation.[2] The purpose of the blood test, i.e., an attempt to show he is not the natural father, thus does not appear to be relevant.

Accordingly, we enter the following

---

[2]Again we hasten to add that we are not deciding the merits of the visitation and custody questions at this time.

## ORDER

And now, this December 14, 1984, defendant's petition for blood tests is denied.