CALOGERO, Justice,
dissenting.
■ The majority opinion contains a well-written exposition on the best interest of the child standard, as well as an interesting discussion of various psychological and social issues relating to child development. I fear, however, that the majority passes too quickly over the primary legal issue presented by this case.
I would phrase that legal issue as follows: What did the Legislature intend when it provided in La.R.S. 9:422.7 that the surrendering parent must be “represented by an attorney” at the signing of the act of surrender?”
By mandating representation for the surrendering parent, did the Legislature simply intend to add a formality to the private adoption process, rather than a substantive provision designed to protect the rights of the surrendering parent? I think not.
Did the Legislature envision that the requirement of representation for the surrendering parent could be satisfied by an attorney who is the law partner of an active proponent of the adoption, and who “represents” his client merely by reading aloud to her the provisions of the act of surrender? Again, I think not.
Did the Legislature intend to provide the surrendering parent with “only reasonably effective representation,” but not “completely independent counsel?” The majority thinks so, and says so, but being unable to find any legal authority in support of the limitation which the majority imposes upon the statutory requirement of representation, I think not.
I dissent because I am of the view that (1) the statutory requirement of counsel for the natural parent is a substantive safeguard that is intended to protect that par *1018 ent’s ability to make a voluntary and informed choice about whether to surrender her (or his) child; (2) as such, the surrendering parent is entitled to a lawyer who will fully advise her of her rights and of the consequences of signing the act of surrender, and who is not burdened with a conflict of interest; (3) the overall factual circumstances of this case compel the conclusion that the surrendering parent did not receive such representation here, and therefore (4) the act of surrender was not executed in compliance with the statute and should be invalidated. The reasons and authorities upon which I base these conclusions are set forth below.
(1) The Importance of Adequate and Independent Representation for the Surrendering Parent
La.R.S. 9:422.6, as worded at the time that the act of surrender was executed, required a recitation that “the parent or parents freely and voluntarily surrender custody of the child,” and “that the parent or parents have been informed and understand that their rights as parent of the child are to be terminated.” This statutory language can only be construed to mean that the parent’s consent to the surrender must not only be voluntary, in that it is free from duress or fraud, but also knowing, in that it is the product of an informed decision. The natural parent’s decision to surrender the child may be considered an informed one only if she has been made aware of the rights which are retained and the rights which are relinquished when the act of surrender is executed.
Fundamentally, the surrendering mother should know that she has the right to revoke her consent to the adoption by following the procedures outlined in La.R.S. 9:422.10. It is equally important for the mother to know that even if she timely revokes her consent to the surrender, she will not regain custody of the child if the court determines that the proposed adoption is in the child’s best interest. See La.R.S. 422.11(A).
The danger that the surrendering parent will make an uninformed decision, based either upon a misapprehension or a complete lack of awareness of her legal rights, is greater in the case of a private adoption than in an agency adoption. Whereas agencies generally provide professional counseling for the surrendering parent, and thus provide greater assurance that the decision to surrender the child will be an informed one, the private adoption process contains fewer protections:
Private adoptions entail a more informal procedure (than agency adoptions.) Some of the safeguards traditionally associated with agency adoptions are conspicuously absent. A well-meaning relative or friend, who may act as an intermediary, seldom has the training or experience demanded by the complexity of the situation. Even if the intermediary is a more knowledgeable professional, such as an attorney or medical doctor, he may neglect to convey much needed information to the mother. A major deficiency in private adoptions, then, is the natural mother’s usual lack of access to information essential for her to make an informed decision.
Comment, Parental Consent: The Need for an Informed Decision in the Private Adoption Scheme, 47 La.L.Rev. 889, 889 (1987).
The majority opinion describes the pressures and uncertainties which confronted relator during the period of time in which she was considering whether to surrender her child for adoption. Such pressures are not unique to this case and can be expected to confront almost any single mother who considers surrendering her child for adoption. I agree with the majority that the pressures exerted here, from Dawn’s parents and perhaps from Perez, did not rise to the level of legal duress and are not in themselves enough to vitiate the act of surrender.
However, while pressures exerted by relatives and friends do not necessarily give rise to legal duress, such pressures can hinder the mother’s ability to make an informed decision. This is particularly true in the private adoption context, where there may often be an absence of a neutral buffer, in the form of a professional coun *1019 selor or social worker, between the surrendering parent and relatives or friends (well-intentioned or not) who provide that parent incomplete or incorrect information, and otherwise attempt to influence the adoption decision.
The difficulty of insuring an informed decision on the part of the surrendering parent is perhaps one reason that some states have outlawed private adoptions.[1] Short of abolishing the private adoption procedure, another measure which may help to insure informed consent is a requirement that the surrendering parent appear before a judge or designated public officer for confirmation of the validity of the act of surrender. See, e.g., Draft ABA Model State Adoption Act, § 10, 19 Fam.L.Q. 103, 112-13 (1985).[2]
The Louisiana statutory scheme does not require the surrendering parent to appear before a judge, commissioner or any other hearing official. While the private adoption itself must pass judicial scrutiny, the surrendering parent need never appear in court unless there is a challenge to the validity of the act of surrender. Instead, the Louisiana Private Adoption Act provides two alternate methods of insuring that the surrendering parent makes an informed decision: (1) the act of surrender must recite that the surrendering parent has been informed of the consequences of signing the act of surrender, and (2) the surrendering parent must be represented by an attorney at the signing of the act.
Thus, the attorney who represents the surrendering parent is the only person who is assigned, in the Louisiana statutory scheme, to stand between that parent and those who might seek to influence the adoption decision. While I do not suggest that this state’s private surrender procedure is inadequate because it does not require direct supervision by a judge or other official, the fact that the attorney is the only person designated to protect the surrendering parent’s interests makes it vital for any such parent to receive adequate and independent representation. The requirement of an attorney in this context is not a mere formality, but a substantive safeguard designed to insure, among other things, that the surrendering parent’s decision is an informed one.
Accordingly, I believe that La.R.S. 9:422.-7, as worded at the time of the execution of the act of surrender in this case, is intended to provide more to the surrendering parent than an attorney or other functionary merely reading that parent the provisions of the act of surrender. The surrendering parent is entitled to an attorney who will represent her with undivided loyalty, counsel her on her legal rights and options, and fully explain to her the pertinent provisions of law and the consequences of signing the act of surrender.
The majority concludes that although there is a statutory requirement of representation for the surrendering parent, unwed mothers who find themselves in Dawn’s position are not entitled to “completely independent counsel.” The majority reaches this conclusion by observing that at the time of the execution of the act of surrender in this case, the statute did not expressly state that the attorney for the surrendering parent should not have a conflict of interest. The majority suggests that because the Legislature did not amend the statute to prohibit a specified conflict of interest situation (representation of the surrendering parent by the attorney for the prospective adoptive parents) until 1987, R.S. 9:422.7, as worded prior to the 1987 amendment and as applicable to the facts of this case, permitted something less than *1020 “completely independent” counsel for the surrendering parent. I do not agree.
In view of the important function which the attorney for the surrendering parent performs (or should perform) in the private adoption process, I believe that La.R.S. 9:422.7, even before the 1987 amendment, required independent counsel for the surrendering parent. The 1987 amendment spells out the need for independent counsel in the sense that it prohibits one type of conflict of interest situation, but surely this does not mean that we should turn our heads when considering conflict of interest problems that arose prior to the amendment, any more than it means that other conflict of interest problems which might arise in the private adoption context are acceptable because they are not specifically prohibited by the statute.
(2) The Surrendering Parent In This Case Was Not “Represented by an Attorney” in the Manner Envisioned by the Statute
The record reveals the following facts regarding Roberts’ “representation” of Dawn at the signing of the act of surrender.
Dawn did not select Roberts as her attorney. Instead, Perez simply designated his law partner, Roberts, as the person who would “represent” Dawn at the signing of the act. There is no indication in the record that Dawn ever met Roberts or discussed the adoption with him prior to the time that Perez and Roberts arrived at her home to obtain her signature on the act of surrender. It is not known what, if anything, Perez told Roberts about the background of the case.
It is known that Perez learned shortly before the signing of the act of surrender that Dawn had stated that she did not want to go through with the adoption and wanted to keep her child. Perez was so informed by Dawn's mother, who told him that Dawn had expressed these views earlier during the day on which the act of surrender was to be signed. It is also known that Perez did not advise Roberts of Dawn’s stated opposition to the adoption.
Due to the absence of contradictory evidence, this Court should accept Dawn’s testimony that Roberts simply read the provisions of the act of surrender, but otherwise told her nothing. She was thus not specifically told by him that she could revoke in 30 days, nor, more importantly, that a revocation within thirty days was no guarantee that she would be able to regain custody of the child.[3]
The latter omission is crucial. Dawn’s testimony indicates that she may have been “buying time” by signing the act of surrender. She testified that she thought she could obtain from relatives in Indiana the money necessary to move to that state with the child, but that she did not have such funds on the date that the signing of the act was scheduled. Possibly she was generally aware of her right to revoke her consent to the surrender. But did she understand that even if she later revoked her consent, her child would not necessarily be returned to her? There is no evidence in the record that she had such an understanding, and certainly no evidence that Roberts explained to her the qualified nature of her right to oppose the adoption. *1021 Thus, the representation was deficient in that significant respect.
The majority contends that there is no specific evidence in the record which shows that Dawn signed the act of surrender while harboring intentions of later revoking her consent. Because of what it considers the absence of such evidence, the majority concludes that even if Dawn had been informed of the limited nature of her revocation rights, she would have surrendered the child.
I partially agree with the majority’s analysis here, in that this record cannot definitively tell us what Dawn would have done if she had been fully informed of the qualified nature of her revocation rights. However, the record does tell us that Dawn expressed a desire to keep her child shortly before she signed the act, that she was in a highly emotional state when she signed (there was testimony that she was crying and that her hand shook), and that she was under intense pressure from her parents to sign on that particular day. Further, Dawn did in fact revoke her consent to the surrender within thirty days of signing the act. Under these circumstances, I am not prepared to assume, as does the majority, that it would have made no difference to this unwed mother if she had been told that she did not have the absolute right to revoke her consent to the surrender, and that once she signed the document, she might forever lose her right to regain custody of the child.
The majority accuses this dissenter of speculation when I suggest that it might have made a difference here if the surrendering parent had been fully informed of her legal rights. Yet that criticism better fits the majority opinion, which assumes that Dawn would have surrendered her child under any circumstances. If assumptions must be made, the safer and sounder legal approach is to assume that the absence of effective legal representation did limit the surrendering parent’s ability to make a knowing and voluntary decision, rather than to assume the contrary.
In addition to the fact that there is no showing that Dawn was advised by an attorney of the limited nature of her revocation rights, it is also clear that she did not receive independent representation. The majority concedes that Dawn’s counsel may have had a conflict of interest, but stops short of concluding that an actual conflict existed. I have no such hesitations.
Attorney Perez designated himself in the act of surrender as the person to whom the child would be delivered. Under the requirements of R.S. 9:422.9, the act of surrender must provide for delivery of the child to either the prospective adoptive parents, or, to the attorney who is “the representative of the prospective adoptive parent or parents.” By designating himself as the person to whom the child was to be delivered, Perez acted as the attorney for the prospective adoptive parents and was their representative at the signing of the act of surrender (and, it might be added, this was in the very act which was passed before him as notary public). The fact that he chose to undertake that role without compensation does not change the fact that he performed legal services. As such his law partner had a conflict of interest when he sought to represent the surrendering parent.
Further, the question of whether Dawn was independently “represented” is not resolved solely by a determination of whether Perez entered into a formal attorney-client relationship with a particular party. The record demonstrates that Perez was personally biased in favor of the adoption, to the point that he believed that the adoption should go forward even after he learned from Mrs. B. that Dawn had expressed the desire to keep her child. Although Perez testified at the adoption hearing that his primary interest was in seeing the child born, and that once the birth occurred he had no personal interest in encouraging Dawn to go through with the adoption, the majority overlooks the fact that Perez admitted that he did not advise Roberts about Dawn’s reservations because he personally believed that the adoption was in the child’s best interests. Leaving aside the question of whether an attorney-client relationship *1022 existed between Perez and any other party, Roberts, law partner of an attorney who actively promoted the adoption in this fashion, did not qualify as independent counsel for relator.
This Court held in Wuertz v. Craig, 458 So.2d 1311 (La.1984), where we invalidated an act of surrender on the ground that the surrendering parent did not receive independent counsel (as well as on the ground of duress), “[representation of the surrendering parent is more than a formal requirement, and should, at the very least, be free from conflict.” 458 So.2d at 1314. As noted by the majority, Wuertz was a plurality opinion, but the proposition for which the case is cited here is sound. The statutory requirement that the surrendering parent must be “represented by an attorney” is not satisfied, in my view, if the attorney has a conflict of interest.
(3) The Act of Surrender Should Be Declared Invalid
I am not prepared to say that an otherwise valid act of surrender must be declared invalid in every case in which a technical conflict of interest arises on the part of the surrendering parent’s attorney. Nor am I prepared to say that the surrender must be vitiated whenever it is demonstrated that there was some minor deficiency in the representation provided by that attorney. The statute itself provides no such sanction.
However, considering the overall circumstances of this case — the conflicts of interest coupled with the absence from the record of evidence that relator was counseled on the specific consequences of signing the act of surrender — I am of the view that the act of surrender should be invalidated. The absence of adequate and independent representation for the surrendering parent in this case is so serious that it calls into question whether the natural mother’s consent was knowingly made.
(4) The Consequences of Invalidating the Act of Surrender
Had the majority agreed with the position stated in this dissent, and reached the conclusion that the act of surrender is invalid, this Court then would have had to consider the difficult issue of whether invalidation of the act of surrender requires returning the child to her natural mother. That issue is difficult in the sense that the child is now over two and one-half years old and has lived with the prospective adoptive parents since birth.
In similar situations, courts in some jurisdictions have held that even without a valid act of surrender, the child should not be returned to the natural parent unless it is further determined, after a new hearing, that such a relocation would be in the best interests of the child. See, e.g., Sorentino v. Family & Children’s Society of Elizabeth, 72 N.J. 127, 367 A.2d 1168 (1976). On the other hand, other jurisdictions have concluded that if the act of surrender is invalid, the prospective adoptive parents simply have no right to custody of the child and the child must be returned to the natural parent. See, e.g., In re Adoption of BGD, 719 P.2d 1373 (Wyo.1986).
The controversial issue considered in Sorentino and In re Adoption of BGD is avoided in this case because of the majority’s determination that the act of surrender was not invalid. I believe that we should declare the act of surrender invalid and face the question of whether such a finding requires the return of the child to the natural mother, or a remand to the district court for a hearing on whether such a move would be in the best interest of the child. I am inclined to believe that the former remedy would have been the legally correct one, but as the majority did not reach the issue I express no definitive opinion on the same.

(5)Conclusion

After the district court and the court of appeal determined that the act of surrender was valid, they proceeded to find that the adoption was in the best interest of the child. I agree with the majority that the best interest inquiries made by the lower courts were deficient, particularly because they placed undue emphasis on the economic position of the respective parties, and placed no emphasis on the biological tie between the natural mother and her child. I am also in agreement with the portion of *1023 the majority opinion which directs that future cases of this type should be handled on an expedited basis.
Nonetheless, I dissent from the majority’s disposition of this case because I believe that the act of surrender should have been declared invalid, and this Court should have then determined the consequences of invalidating that act.

. See Comment, Parental Consent: The Need for an Informed Decision in the Private Adoption Scheme, supra, 47 La.L.Rev. at 889-90. Five states which have outlawed private adoptions are Minnesota, Connecticut, Delaware, Michigan and Massachusetts. Id. at 889 n. 4.

. The commentary under § 10 of the Draft ABA Model State Adoption Act provides that:
"... to ensure that the consent of the adoptee is made knowingly and voluntarily, strict control is required. Only a judge, a public officer appointed by the court, or an agency appointee may take a consent or surrender, from a mother or an adoptee.”

. The act of surrender recites that "Roberts is the attorney for appearer and the content and effect of this act of surrender has been fully explained to appearer by said attorney and ap-pearer fully understands the meaning and result of this document.” While the record reflects that Roberts read the quoted words to Dawn, there is no evidence that he (or any other person) actually did explain to Dawn the consequences of signing the act.
The act of surrender executed in this case did not recite Dawn’s qualified right to revoke her consent to the surrender. At the time that the act of surrender was executed, R.S. 9:422.6 did not mandate such a recitation, but simply required a statement "that the parent or parents have been informed and understand that their rights as parent of the child are to be terminated.” As amended by Acts 1987, No. 702, R.S. 9:422.6.(11) now requires:
“A declaration that the parent (or) parents have been advised by an attorney other than the attorney for the prospective parents that all parental rights are to be terminated upon executing the act ... subject, however, to the right to oppose the adoption, as provided by R.S. 9:422.10 and 422.11, if exercised timely in the manner provided by R.S. 9:422.10." (emphasis added)