624 A.2d 193

**Elba ROSADO and Julio Carrasquillo, Appellants,**

v.

**Soledad DIAZ, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1993.

Filed May 5, 1993.

156

Michele A. Goldfarb, Philadelphia, for appellants.

Soledad Diaz, appellee, pro se.

Before BECK, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

The Plaintiff/Appellant, Elba Rosado, appeals the order of the Court of Common Pleas of Philadelphia County, Family Division, dismissing her complaint for custody of the minor-

child Bill Omar Carrasquillo.[1] We vacate and remand with directions.

The facts of record disclose that the Plaintiff filed a complaint for custody on May 8, 1992, which alleged that the natural father of the child was in prison, that the relationship of the Plaintiff to the child was that of a "friend", that the Plaintiff "had sole custody of the child since birth", that the child was then five years of age and the Plaintiff wanted "sole" custody of the child. The natural mother, the Defendant/Appellee Soledad Diaz, filed a similar custody petition.

On August 14, 1992, a hearing was conducted wherein the court was advised that the Plaintiff was:

the de facto stepmother of the child. She lives with the child's father and has raised the child since the child was a small infant in the last six years.

N.T. 4. With this disclosure, the court ruled that the Plaintiff had no standing to bring a custody action absent an initial declaration that the child was dependent, and it cited *Gradwell v. Strausser*, 416 Pa.Super. 118, 610 A.2d 999 (1992), in support of its determination that "third parties[, as the Plaintiff,] have no standing absent a finding of dependency." N.T. 5.

Counsel for the Plaintiff attempted to produce evidence that his client had raised the child since birth and that the Defendant had never "met the child, except when he was a tiny infant." N.T. 4 and 8. The court refused to accept any testimony on the ground that the Defendant/natural parent had a "prima facie right to custody" and the Plaintiff "lack[ed] a legal basis to claim custody equal to that of the parent...."

It was the Defendant's contention that her mother had given the child to the natural father because of her use of drugs. She then claimed that the drug problem had been rectified and this turn of events entitled her to possession of

1. Although the name of Julio Carrasquillo, the natural father of the child, appears in the case caption as a party-Plaintiff, he is not a party to this appeal.

The father is presently incarcerated and is not a party to this custody action.

her son by way of the grant of her petition for custody. To refute this, the Plaintiff offered to prove that the child had been in her possession "since he was two months old", and witnesses were available to testify to such a fact, as well as access to kindergarten and immunization records and photographs to establish that the child had lived with the Plaintiff and the natural father his entire life. N.T. 10.

The court refused to hear testimony on the custody question. It believed that a "dependency action" was the vehicle by which the Plaintiff (having no "standing" equal to that of the natural mother/Defendant) would have to proceed to obtain custody of the child. As a result, the Plaintiff's complaint was denied, but the Defendant was granted custody of the child. This appeal ensued [2] and necessitates the resolution of the claim: Did the court err in finding that the Plaintiff had no "standing" to institute a custody proceeding, and that her only recourse was the institution of a dependency action?

Initially, we find that the Plaintiff's living arrangement with the natural father warrants categorizing her as a "third party" (versus a "parent") in this litigation.[3] Consequently, the law dictates that the appropriate manner for a "third party" to obtain child custody is through a dependency proceeding. 42 Pa.C.S. § 6301; *Helsel v. Blair County Children and Youth Services*, 359 Pa.Super. 487, 519 A.2d 456 (1986). The reason for such an approach by third parties is that:

Absent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parent. If [the courts] were to grant standing to third parties under these circumstances,

a parent's prima facie right to custody could thus be challenged without a clear and convincing showing that

---

2. By per curiam order of this Court dated August 20, 1992, the court's order awarding custody of the child to the Defendant was permanently stayed pending appellate review.

3. As stated in *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), there are three types of interested parties in a child custody dispute: 1) parent versus parent; 2) parent(s) and a third party; and 3) parent(s) and the state. Out of these choices, the Plaintiff falls into the second category of disputants. Id.

the child is not receiving proper parental care. This is not appropriate when the party seeking custody lacks a legal basis to claim custody equal with that of a parent. It is an unacceptable means of circumventing the procedures established to determine the necessity of forfeiting parental rights.

*Gradwell,* supra, 416 Pa.Super. at 123, 610 A.2d at 1002 (Citations omitted). The exception to this third-party-lack-of-standing-preclusion is proof that such a "party stands in loco parentis, that is, where he or she has 'assumed obligations incident to the parental relationship.'" Id. (Citations omitted).

In resolving this "loco parentis" issue, the courts of this Commonwealth have looked favorably upon and have not minimized the "stability" factor between the child and the third party. For example, this Court in *Commonwealth ex rel. Bankert v. Children's Services,* 224 Pa.Super. 556, 307 A.2d 411 (1973), found the evidence insufficient to justify awarding custody to Child Services and reversed the trial court's order doing so. As herein relevant, we wrote on the question of a child's best interests that:

Of extreme significance in this conclusion is the fact that Charlene has been in the care and custody of appellants throughout her development from an infant of three weeks to a child of nine years. After such a period of time, a child "becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury.... Nothing could be more cruel than the forceable separation of the child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection." *Commonwealth ex rel. Children's Aid Society v. Gard,* supra, [362 Pa.] at 97, 66 A.2d at 306. "The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations, incident to the

only parental control and supervision it has ever known could have a very harmful effect on the child's whole life." *Davies Adoption Case*, 353 Pa. 579, 588, 46 A.2d 252, 257 (1945). These factors are especially strong in this case in which the child considers the appellant her parents. The continuous custody of Charlene with appellants for all but the first three weeks of her life, and the emotionally devastating effects which could result from a forced separation are matters which should be seriously weighed in determining the child's best interests.

224 Pa.Super. at 560, 307 A.2d at 414. Similarly, in *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 138 A.2d 225 (1958), we reversed a lower court's order awarding custody of the child (Leroy) to his natural mother (Susan) and discounting the positive efforts of the child's stepmother (Audrey) in raising the child. On these points, we stated:

The lower court also erred in expressly disregarding the important circumstance that Audrey has lovingly cared for Leroy as the only mother he has known since he was fourteen months old. In *Davies Adoption Case*, 353 Pa. 579, 46 A.2d 252, 257, which involved a four-year-old child, Mr. Justice (now Mr. Chief Justice) Jones said: "The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations, incident to the only parental control and supervision it has ever know, could have a very harmful effect an [sic] the child's whole life. Fortunately, the law's regard for a child's welfare does not admit of any such injury or harm being done it". In *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300, 306, the child in question had been in a foster home for approximately four years, having been placed there when she was five months old. The following excerpt from the opinion of Mr. Chief Justice Maxey, awarding custody to the foster parents, is particularly applicable to the present factual situation: "A child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given. In that respect

it resembles a young tree whose roots have not yet taken deep hold in the nourishing earth, but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury. Nothing could be more cruel than the forceable separation of a child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection".

185 Pa.Super. at 172, 138 A.2d at 228–29.

In addition, in this Commonwealth courts have looked to the problem of "separation trauma" and "bonding" between the child and third party in making an assessment of the "best interests of the child" in custody matters. See, e.g., *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157, 160 (1980); *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424, 427 (1988).

■ Instantly, we find that the trial court erred in failing to take testimony on the question of the Plaintiff's "in loco parentis" status: raising the child for all but two months of his six years of existence. This would have allowed the court to determine the level and quality of the Plaintiff's involvement in raising the child.

The phrase "in loco parentis" refers to a person who puts himself[/herself] in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 241 A.2d 531, 533 (1968).

Based on a full record, the court would be able to make an informed decision on the Plaintiff's third party status to determine whether she had risen to the level of "loco paren-

tis". Instead, the court summarily dismissed the Plaintiff's complaint for custody without taking evidence in support of her allegations that she raised the child since birth and of the natural father's imprisonment, the commencement date of which would have disclosed whether the Plaintiff had sole custody of the child during this period of incarceration. See *Gradwell*, supra, 416 Pa.Super. at 125, 610 A.2d at 1003.

Absent inquiry into the Plaintiff's third party status, i.e., did she engage in conduct entitling her to "in loco parentis" status, we have no basis on which to conclude that the Plaintiff is merely a third party lacking standing to seek custody, except by means of a dependency proceeding. Cf. *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974).

■ If the Plaintiff would have been able to establish herself as one "in loco parentis" with the child, she need not pursue custody via the dependency route. She may utilize, as she did below initially, a complaint in custody to establish the best interests of the child. See *Gradwell*, supra, 416 Pa.Super. at 123–25, 610 A.2d at 1002–03 (Citations omitted).

Therefore, because of the error of the court below in prohibiting the Plaintiff from presenting evidence on the issue of "in loco parentis", the case must be remanded for a full hearing on this subject. See *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), and contrast with *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307, 318 (1976).

Order vacated, case remanded for a *procedendo*, and jurisdiction is not retained.