TAMILIA, Judge:
 

 Josephine N., mother, appeals from the March 1, 1993 Order awarding primary custody of child, J.L., born August 26, 1989, to maternal aunt/appellee, Vicki N., and partial custody to mother every other weekend from Saturday morning to Sunday night.
 

 The cases are legion in this Commonwealth that the paramount concern in issues of child custody is the best interest of the child, based on all factors which legitimately have an effect on the child’s physical, intellectual, moral and spiritual well-being.
 
 McMillen v. McMillen,
 
 529 Pa. 198, 602 A.2d 845 (1992) ;
 
 Sawko v. Sawko,
 
 425 Pa.Super. 450, 625 A.2d 692 (1993) .
 

 On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the factfinding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. See
 
 Karis v. Karis,
 
 518 Pa. 601, 608, 544 A.2d 1328, 1332 (1988);
 
 Lombardo v. Lombardo,
 
 515 Pa. 139, 147-48, 527 A.2d 525, 529
 
 *169
 
 (1987);
 
 Commonwealth ex rel. Robinson v. Robinson,
 
 505 Pa. 226, 236-37, 478 A.2d 800, 805-06 (1984).
 
 Zummo v. Zummo,
 
 394 Pa.Super. 30, 54, 574 A.2d 1130, 1142 (1990).
 

 In determining the appropriate standard for adjudication of custody disputes between a parent or parents and a third party, our Supreme Court adopted the carefully fashioned principles set forth by this Court in
 
 In re Custody of Hernandez,
 
 249 Pa.Super. 274, 376 A.2d 648 (1977).
 
 Ellerbe v. Hooks,
 
 490 Pa. 363, 416 A.2d 512 (1980).
 

 In such cases,
 

 The parties do not start out even; the parents have a ‘prima facie right to custody,’ which will be forfeited only if ‘convincing reasons’ appear that the child’s best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents’ side. What the judge must do, therefore, is first, hear all evidence relevant to the child’s best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party’s side.
 
 [Hernandez]
 
 at 286, 376 A.2d at 654 (footnote omitted).
 

 We agree that this approach is appropriate. Clearly these principles do not preclude an award of custody to the non-parent. Rather they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent’s burden is heavy.
 

 Id.
 
 at 367-68, 416 A.2d at 514. The Supreme Court soon thereafter reiterated the standard in such cases was
 

 not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent’s dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well-being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.
 

 
 *170
 

 Albright v. Commonwealth ex rel. Fetters,
 
 491 Pa. 320, 328, 421 A.2d 157, 161 (1980).
 

 Finally, this Court spoke again, enumerating the considerations which weigh against the elevation of parenthood above all other factors in custody determinations.
 

 First, although parenthood is a highly important factor, it should not be accorded determinative weight in our decision. Other factors, like the value of stability, are also to be accorded great weight. Indeed, in
 
 EUerbe
 
 itself the Supreme Court affirmed the trial court’s grant of custody to grandparents over a parent of the subject child for the very reason that the child had developed a stable relationship with the grandparents and had a stable environment with them. The same basic situation was presented in
 
 Albright,
 
 and once again the grandparents were given custody. Second, the
 
 Hernandez
 
 standard is first and foremost an allocation of the burden of proof to the third parties, but it does not impose on them the burden of showing that the parent is unfit. Thus, the issue centers on the child, and not on the parent.
 

 Snarski v. Krincek,
 
 372 Pa.Super. 58, 77, 538 A.2d 1348, 1358 (1988).
 

 Mother initially argues the trial court lacked subject matter jurisdiction to decide this matter, as aunt, a third-party under existing custody law, did not have
 
 in loco parentis
 
 status. At the August 30, 1989 hearing on a petition for special relief, which mother claims was an
 
 ex parte
 
 proceeding, mother argues aunt failed to meet the burden of showing, first, by clear and convincing evidence, the child was dependent under the Juvenile Act, 42 Pa.C.S. § 6341(c), and secondly, that aunt did not meet the burden of showing removal from mother was clearly necessary.
 
 Id.,
 
 § 6351(b). Accordingly, she argues the trial court deprived her of a fundamental liberty interest in her child by granting aunt
 
 in loco parentis
 
 status in opposition and defiance of mother’s wishes.
 

 A review of the record reveals mother, on appeal, raises for the first time the trial court’s subject matter jurisdiction and
 
 *171
 
 aunt’s standing
 
 in loco parentis.
 
 Although this may be viewed as a waiver of the issue,
 
 see
 
 Pa.R.C.P. § 227.1(b)
 
 Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,
 
 507 Pa. 204, 489 A.2d 1291 (1985), we shall conduct an independent review of the record to determine whether the trial court erred in granting aunt
 
 in loco parentis
 
 status.
 

 According to the record, in June, 1989, mother learned for the first time she had breast cancer and she was five months’ pregnant. Mother sought treatment for her cancer in July, 1989, but was advised to avoid any chemotherapy or other treatment until after the birth. J.L. was born on August 26, 1989, however, mother, concerned about her cancer, expressed no interest in the child and intended to place her in the care of maternal grandmother or in foster care. Mother subsequently abandoned the child at the hospital, stating grandmother and/or aunt could care for her. On August 30, 1989, pursuant to an emergency petition by aunt, the trial court ordered that child remain at the hospital pending further court order. On September 1, 1989, the court awarded temporary custody to aunt and later granted mother visitation pursuant to a December 20, 1989 Order.
 

 The trial court based its decision on the fact it was clear the infant essentially was abandoned at the hospital by her mother for placement in foster care or for adoption. Mother, who was put on notice of aunt’s petitions, chose not to appear in court or otherwise contest the petitions until March 23, 1990, when she filed a petition to modify custody. As previously mentioned, at no time did mother contest aunt’s status
 
 in loco parentis.
 
 Accordingly, the trial court determined aunt supplied sufficient proof at the time of the initial hearing of her desire and intent to put herself in the position of assuming the obligation of parenting J.L. at a time when the child was in need, mother was not prepared, father was unwilling and neither had any intention of taking J.L. home.
 

 Moreover, aunt did not need to file a dependency action once she established herself as one in
 
 loco parentis
 
 with
 
 *172
 
 the child.
 
 Rosado v. Diaz,
 
 425 Pa.Super. 155, 161, 624 A.2d 193, 196 (1993). Mother was in no way deprived of a determination by the court of the necessity of forfeiting her rights. Rather, mother voluntarily forfeited her rights by abandoning J.L. at birth with no intent to assume parental obligations. The evidence was clear and convincing J.L. was not receiving any parental care when aunt acquired
 
 in loco parentis
 
 status. Mother’s challenge came well after J.L. had been placed in the temporary custody of aunt, who had a prima facie right to custody by virtue of her status
 
 in loco parentis.
 

 Mother next argues the trial court erred in its failure to consider her prima facie right to custody, and its determination was not supported by competent evidence to overcome this right to custody. This prima facie right to custody may be forfeited, however, if there are convincing reasons the child’s best interests will be served by living with a third party.
 
 In re Custody of Hernandez, supra.
 
 The trial court based its decision on several factors, the totality of which supports its determination that it is in the best interests of J.L. to grant primary custody to aunt with support from grandmother.
 

 The first most pertinent factor is mother’s declining health. The trial court, reviewing the medical records and related testimony, relied upon the October 5, 1992 bone scan study which found progression of metastatic disease in the bones since April 9, 1992, particularly with the numerous foci in the spine and the focus in the skull. The court also accepted the findings of Dr. Kevin R. Fox, whose report the parties admitted into record by agreement, which determined mother had stage IV disease, based on bone metastases and thus had a 100 per cent chance of dying within four years. When J.L. was born, mother admitted neither wanting to or being able to care for her while undergoing cancer treatment. She only decided she wanted custody after she had been through early treatments and believed she was cured. However, based on the evidence presented, mother again must deal with chemotherapy treatments. Past conduct is not
 
 *173
 
 relevant unless it will produce an ongoing negative effect on J.L.’s welfare.
 
 Commonwealth ex rel. Gorto v. Gorto,
 
 298 Pa.Super. 509, 444 A.2d 1299 (1982). If granted custody, mother might again find the need to give J.L. up for foster care or adoption when the time comes to undergo additional treatment. Mother has testified that her priority is not J.L., thus the trial court properly found her condition likely will produce a negative effect on the child’s welfare. Based on her past behavior, the court also considered mother’s emotional capacity to cope with her future medical treatments as well as her physical inability to care for J.L., which, when taken together, provide convincing reasons that custody should be with aunt.
 

 The court also considered evidence of problems with alcohol abuse which effects a parent’s ability to care for a child.
 
 See Barron v. Barron,
 
 406 Pa.Super. 401, 594 A.2d 682 (1991). The court found mother has a drinking problem, relying on her own testimony she “probably” is an alcoholic, which may have an adverse effect on J.L. Moreover, mother and father testified about violent physical confrontations which occurred when they drank too much. This evidence coupled with mother’s medical problems supports the court’s decision to place J.L. in the custody of aunt, who has provided her with a safe, caring and stable home since birth.
 

 Finally, the trial court considered that aunt can and will provide mother with constant access to her daughter. Aunt and grandmother, who live in Reading, Pennsylvania, have been cooperative with mother, and J.L. at least will have the benefit of some relationship with mother, which may not exist if she is placed for adoption or in a foster home. These factors, when cumulatively considered by the trial court, provide convincing reasons that it is in J.L.’s best interests that her custody should continue to be with aunt. Accordingly, we find no abuse of discretion in the trial court’s award of custody to maternal aunt.
 

 Order affirmed.
 

 McEWEN, J., concurs in the result.