663 A.2d 178

**Robert WALKENSTEIN and Sally Walkenstein**

v.

**Susan WALKENSTEIN, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1995.

Filed July 28, 1995.

---

684

Joseph M. Lamonaca, West Chester, for appellant.

Charles C. Shainberg, Philadelphia, for appellees.

Before HUDOCK, SAYLOR and HESTER, JJ.

HESTER, Judge:

This is an appeal by appellant-mother, Susan Walkenstein, from the May 10, 1994 order granting primary physical custody of David Walkenstein to his maternal grandmother, Sally Walkenstein, appellee. We affirm.

David was born out of wedlock on November 8, 1987. He lived with Mother until September 26, 1990, when she was involuntarily committed to Eastern Pennsylvania Psychiatric Institute ("EPPI") for drug and alcohol abuse. Notes of Testimony ("N.T."), 3/23/94, at 153. Grandmother and Grandfather, Robert Walkenstein, who are divorced, petitioned for and were granted joint custody of David in November, 1990. David has lived with Grandmother outside of Philadelphia since that time. Following Mother's discharge from EPPI in October, 1990, she attended a six-week program at Eagleville Rehabilitative Hospital until November 26, 1990. At that time, Mother moved into Oxford House, a recovery rooming house, and attended a rehabilitative program supervised by the Council on Alcohol and Drug Abuse in Allentown, Pennsylvania. N.T., 11/10/93, at 11–12. Since November, 1990, Mother has remained drug and alcohol free, obtained an apartment, opened her own cleaning business, and enrolled in college. N.T., 11/23/94, at 150–53.

Mother attempted to visit David informally, but Grandmother was uncooperative. Grandfather, on the other hand, has encouraged Mother's attempts at visitation. On October 15, 1992, Mother filed a petition for visitation and later sought, on

February 16, 1993, primary physical custody of David. Hearings were held on November 10, 1993, March 1, 1994, March 23, 1994, and May 2, 1994. The witnesses included Mother, Grandmother, Grandfather, Mother's boyfriend, Mother's sister, Mother's program director from the Council on Alcohol and Drug Abuse, psychologist Jonathan Gould, who evaluated Mother, Dr. Marla Isaacs, who evaluated everyone who has a caregiving role with David, and Dr. Marc Pellico, David's school psychologist. In addition, the court spoke with then six-year-old David in chambers.

On May 10, 1994, the trial court granted Grandmother primary physical custody of David and ordered that Mother, Grandmother, and Grandfather share legal custody of the child. In addition, the court granted Mother partial physical custody every other weekend, alternating between Mother's home and Grandfather's home, and two weeks during the summer. Mother and Grandmother also were ordered to participate in joint and individual counseling.

Appellant raises the following issues for our review:

I. Whether the Trial Court respectfully erred in concluding that the subject minor child's interest and permanent welfare would be best served by vesting custody in the Appellee, against the weight of the record evidence.

II. Whether the Trial Court respectfully erred in concluding that the appellant, as the child's natural mother, did not have a Prima Facia (sic) right to custody of her child, against the child's grandmother.

III. Whether the Trial Court respectfully erred in failing to rule at the onset of the hearing regarding matters raised of record regarding who had the burden of proof in this matter, and what that burden was.

IV. Whether the Trial Court respectfully erred in giving undue weight to the refuted testimony of the Court appointed evaluator.

Initially, we will address the first and third issues together, followed by the remaining two issues. Appellant contends that the trial court erred in concluding that Mother did not

have a prima facie right to custody in her child and in failing to so rule at the beginning of the custody hearings.

■ In leveling these arguments, appellant has confused burden of proof as to custody with principles of standing as they relate to a third party's ability to pursue a custody action against a natural parent. In such a case, we have stated:

Absent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parent. If the courts were to grant standing to third parties under these circumstances,

a parent's prima facie right to custody could thus be challenged without a clear and convincing showing that the child is not receiving proper parental care. This is not appropriate when the party seeking custody lacks a legal basis to claim custody equal with that of a parent. It is an unacceptable means of circumventing the procedures established to determine the necessity of forfeiting parental rights.

*Rosado v. Diaz,* 425 Pa.Super. 155, 158–59, 624 A.2d 193, 195 (1993), quoting *Gradwell v. Strausser,* 416 Pa.Super. 118, 123, 610 A.2d 999, 1002 (1992). Standing is granted where a party stands *in loco parentis* to a child and thus has assumed obligations incident to the parental relationship. *Id.*

■ In the present case, Grandmother has established her standing since she was granted custody of David by court order dated November 28, 1990, at which time Mother was committed involuntarily to a psychiatric hospital and the identity of father was unknown. The November 28 order also indicates that the matter could be reopened upon application of Mother or Father. Obviously, Mother was in no position to seek the return of her child until she did so in February, 1993. *See Cardamone v. Elshoff,* 442 Pa.Super. 263, 659 A.2d 575 (1995) (maternal aunt clearly established that she stood *in loco parentis* to child and therefore had standing to seek custody where child was in aunt's custody for twenty-eight months, mother consensually left child in aunt's care, and aunt provided food, shelter, and clothing during that period).

Clearly, this is not a situation where a third party is seeking custody from a natural parent and the issue of standing initially must be addressed. Rather, due to Mother's unavailability and incapacity, and Father's non-involvement, Grandmother and Grandfather were awarded custody pursuant to a valid, unchallenged court order. When Mother rehabilitated herself to the point she became ready to resume the care of her child, approximately two and one-half years later, the court's focus was whether it was in David's best interest to remain in his Grandmother's care or to return to his Mother.

The record is not clear whether David was declared a dependent child in November, 1990, when Grandparents sought and were awarded custody. Any issue of standing properly would have been before the court at that time. What is clear, however, is that the November, 1990 order never was appealed, and Grandmother has raised David since he was barely three years old. Upon Mother's 1993 petition, the trial court accepted Grandmother's *in-loco-parentis* status and considered whether it was in David's best interest to remain with his Grandmother or return to his Mother. The trial court did not err.

We find guidance from *Vicki N. v. Josephine N.*, 437 Pa.Super. 166, 649 A.2d 709 (1994). The natural mother in *Vicki N.* appealed the lower court's award of primary custody of her child to the maternal aunt. We stated therein:

[A]unt did not need to file a dependency action once she established herself as one in *loco parentis* with the child. *Rosado v. Diaz*, 425 Pa.Super. 155, 161, 624 A.2d 193, 196 (1993). Mother was in no way deprived of a determination by the court of the necessity of forfeiting her rights. Rather, mother voluntarily forfeited her rights by abandoning [the child] at birth with no intent to assume parental obligations. The evidence was clear and convincing [the child] was not receiving any parental care when aunt acquired *in loco parentis* status. Mother's challenge came well after [the child] had been placed in the temporary

custody of aunt, who had a prima facie right to custody by virtue of her status *in loco parentis.*

*Id.,* 437 Pa.Super. at 171–72, 649 A.2d at 711.

■ Finally, the trial court stated that it had, in fact, "required Grandmother to carry the burden of proof by clear and convincing evidence...." Trial court opinion, 9/28/94, at 11. In a recent case where the natural father sought custody of his child from the maternal grandmother after the child's mother was killed, we stated:

In a custody dispute between a parent and a non-parent, the non-parent bears both the burden of persuasion and the burden of production concerning evidence. *Karner v. McMahon,* 433 Pa.Super. 290, 299, 640 A.2d 926, 930 (1994). The non-parent's evidentiary burden is a heavy one as the scales are "tipped hard" in favor of the parent. *Id.* (quoting *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977)). Although it has sometimes been said that a natural parent possesses a *"prima facie* right" to custody of his or her child, this cannot be understood as designating a property right in the child. *Id.* (citing *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980)). Parenthood alone is insufficient to defeat a custody claim raised by a non-parent; the hearing court must remain free to award custody to the person who will most adequately foster the best interests of the child. *Id.,* 433 Pa.Super. at 300, 640 A.2d at 931.

*Dorsey v. Freeman,* 438 Pa.Super. 236, 239, 652 A.2d 352, 353 (1994). *See also Cardamone v. Elshoff, supra* (standard for adjudication of custody disputes between parent and third party requires non-parent to bear burden of production and persuasion but does not preclude award of custody to the non-parent). The trial court applied the appropriate standard for adjudication of custody disputes between a parent and a third party and required Grandmother to carry her burden of persuasion and production concerning the evidence.

■ Moreover, there is no merit to appellant's claim that the trial court erred in failing to so rule at the start of the

hearings in this matter. Appellant was aware at all times what burden she carried as evidenced by her request that the trial court rule that Grandmother carried the burden of proof. Her nebulous claim that the court's failure to rule at the outset deprived her of guidance "in questioning and cross-examining witnesses, and experts, and in preparing for and presenting the case" simply is not substantiated in the record. Appellant's brief at 20.

Furthermore, by not ruling as to the allocation of the burden of proof at the outset, the trial court actually forced appellant to proceed as if she carried the burden of production and persuasion. Thus, when the trial court analyzed the evidence, noting that Grandmother bore the burden of persuasion and production, appellant was held to a less stringent standard than she may have thought during the hearings. Therefore, the trial court is correct that any error in failing to rule on this matter at the outset was to her benefit.

Finally, we note that appellant has failed to cite any cases in support of her argument, thereby supporting our conclusion regarding the meritless nature of this claim. *Gordon v. Gordon,* 436 Pa.Super. 126, 647 A.2d 530 (1994), petition for allowance of appeal granted, 540 Pa. 583, 655 A.2d 515 (1995) (where husband's claim was unsupported, lacking references to the record or to any legal authority, it was dismissed as meritless).

■ Appellant also argues that the trial court erred in concluding that it was in David's best interest to remain in his Grandmother's custody.

In any custody dispute, whether the case involves two natural parents or a parent and a third party, the court's overriding concern is always to determine what will serve the best interests of the child. *Id.* This question may never be subordinated to other considerations such as "fundamental rights and fair play." *Andrews v. Andrews,* 411 Pa.Super. 286, 289 n. 2, 601 A.2d 352, 353 n. 2 (1991), *aff'd,* 533 Pa. 354, 625 A.2d 613 (1993). The custody court has the obligation to weigh all relevant factors that could affect the

child's well being. *Id.,* 411 Pa.Super. at 289, 601 A.2d at 353. In a custody dispute, all other issues are deemed less important than the child's physical, intellectual, moral, and spiritual well-being. *Nonnenman v. Elshimy,* 419 Pa.Super. 597, 600, 615 A.2d 799, 801 (1992), *appeal denied,* 535 Pa. 637, 631 A.2d 1008 (1993); *Warren v. Rickabaugh,* 410 Pa.Super. 431, 600 A.2d 218 (1991).

> [T]he fact that the best interests of the child is the paramount consideration is ... beyond peradventure ... Indeed, even the rights of natural parents are subordinate to the child's best interest. *Constant A. v. Paul C.A.,* 344 Pa.Super. 49, 496 A.2d 1 (1985).

*Karner v. McMahon,* 433 Pa.Super. at 301–02, 640 A.2d at 932.

*Dorsey v. Freeman, supra,* 438 Pa.Super. at 239, 652 A.2d at 353 (1994).

The trial court reviewed all of the evidence offered at the hearings on this matter and concluded that while Mother should have increased partial custody with David, it was in the child's best interest to remain in Grandmother's care. The trial court stated:

> It should be emphasized that the Court envisions a point in the future where Mother will regain custody. Throughout the hearings on this matter, the Court took pains to remind these litigants that, just as David will grow and change, they will age and change. No custody decision is written in stone and this one certainly will need to be revisited to assess David's development and his needs as well as the progress made by the adults in his life. However, at the present time, David is at a point in his progress where stability, routine, and clear limits are key.

Trial court opinion, 9/28/94, at 9.

The trial court emphasized David's special needs in that he has been diagnosed with attention deficit disorder. During the 1994–95 school year, David was to be placed in a special class wherein his learning deficits were to be addressed through a program of specially designed instruction. The trial

court concluded based upon all of the evidence presented that a major change in David's home and school situation would jeopardize his progress and thus, was not in his best interest.

In arguing that the trial court erred in concluding that David's best interests compel that he remain in Grandmother's primary physical custody, appellant focuses upon the unfavorable testimony presented by Dr. Marla Isaacs, the court-appointed evaluator, regarding Grandmother. For example, Dr. Isaacs noted that Grandmother, to David's detriment, refused to refer to appellant as "mommy" when speaking to David and insisted in referring to her as Susan. Moreover, the evaluator noted that Grandmother's anger toward appellant and her lack of compassion for Susan "may lead her to undermind (sic) any constructive relationship that David can develop with his mother...." N.T., 3/23/94, at 78.

While the record certainly supports the fact that Grandmother's attitude toward appellant has the potential to undermine David's relationship with Mother, there also was considerable testimony regarding factors weighing against David's return to appellant. Dr. Isaacs testified that Mother, while usually able to control her emotions, experiences lapses "when the temper outburst is being turned into rages." *Id.* at 38. The psychologist described Mother as immature and impulsive with a tendency to overreact. *Id.* In response to appellant's counsel's question, "[W]ouldn't it be better to take the risk and transfer custody back to the Mother now, presently?", *Id.* at 98, Dr. Isaacs responded,

> Well, for the reasons that I said and I can repeat them, but the plain one is he is very much connected to his Grandmother and this is the life that he knows, this is where he's been for the last three years, close to three years, the psychological capacity when compared leaves the Grandmother in a far better position at this point to deal with David. Notwithstanding she's not perfect and it's a major problem that she feels the way she does towards her daughter. But it's also a major problem that Susan feels the way she does towards the Grandmother who would have to stay an active part of this child's life if we're talking

about this child's development because he's already sustained a lot. He can't afford to sustain any more losses. Right now the loss that he would be sustaining would be losing his home and his Grandmother. That would be experienced by him as the loss. That's where he's been living. That's the life he knows and I don't think he can sustain that loss at this time in his life.

*Id.* at 98–99.

That we may have decided this case differently from the trial court does not, in light of our standard of review, allow us to reverse the trial court. It is clear that Mother has worked very hard at conquering the factors in her life that impeded her relationship with her child. Moreover, it also is clear that Grandmother's attitude to Mother has the potential to undermine any relationship between Mother and David, which will not be tolerated. However, the trial court considered all of the evidence presented in this case, evaluated the credibility of the witnesses, as it must, and made conclusions which are supported by the evidence presented. We cannot say that the trial court erred.

■ Finally, Mother contends the trial court erred in giving undue weight to the testimony of Dr. Isaacs. Again, appellant underscores Dr. Isaacs's testimony that Grandmother harbors anger toward Mother which may impact on the relationship between David and appellant. We defer to the trial court on issues of credibility and weight of the evidence, as that court has had the opportunity to observe the demeanor of the witnesses. *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988). We are not troubled by the trial court's apparent conclusion that the evidence offered in support of transferring custody to appellant was outweighed by the evidence offered in support of not doing so. The trial court considered all of the factors impacting upon David's best interest, and determined that they compel that David remain with Grandmother. A review of the trial court opinion reveals that not only did the trial court consider the testimony of Dr. Isaacs, but it also considered testimony of the parties, Dr. Gould, Dr. Pellico, and others. From our independent review of the record, we

cannot say that the trial court's order represents an abuse of discretion.

Order affirmed.