**Hudzy v. Kline**

C.P. of Clearfield County, no. 93-1769-C.D.

AMMERMAN, *J.,* February 21, 1996—This case concerns custody of Christeena M. Hudzy d.o.b. October 9, 1988. Plaintiff is Michael G. Hudzy, father, and the original defendant was Amy Kay Shelenberger, mother. The two were never married.

The case started with the father's pro se filing of a custody complaint on December 14, 1993. On May 11, 1994, Senior Judge Jay W. Myers, specially presiding, executed a consent order which gave primary custody of Christeena to the father with rights of partial custody in the maternal grandparents, Emery and Theo Kline. Judge Myers' order also provided for custody disposition of mother's other child, Joey E. Shelenberger. Custody of Joey is not relevant to, or a part of, this opinion.

As a part of their partial custody, Mr. and Mrs. Kline were to have Christeena beginning on June 12 and ending June 19, 1994. Father failed and refused to abide by the order and he and Christeena could not be located despite the efforts of Mr. and Mrs. Kline in driving to Virginia Beach, Virginia, the father's proported residence. A petition for civil contempt was filed by Mr. and Mrs. Kline, with father being ordered to appear before the court on July 22, 1994. Father did not appear on said date, and as a result a bench warrant was issued for his arrest by President Judge John K. Reilly Jr.

Thereafter, father was located in the State of Virginia and involuntarily returned to Clearfield County on or about November 22, 1994. The day before father's return, criminal charges were filed against him by the Sandy Township Police Department for interference with custody of children, concealing whereabouts of a child and endangering welfare of children. Father's preliminary hearing was held on December 2, 1994 at which time his bail was set at $10,000 and the charges of interference with custody of children and concealing whereabouts of a child were returned to court. At this point father remained incarcerated on both the criminal charges and the civil bench warrant. On June 20, 1995, father appeared before President Judge Reilly and

pleaded guilty to interference with custody of children. He received a sentence of a minimum of six months and a maximum of two years less one day. On August 29, 1995 father was released from his incarceration as President Judge Reilly, by order of that day, rescinded the bench warrant.

On September 27, 1994 President Judge Reilly issued an order granting temporary physical custody of Christeena to Mr. and Mrs. Kline. Christeena had been located in Suffolk, Virginia on September 26, 1994 and Mr. and Mrs. Kline had picked her up that night.

Following his release from incarceration, father on September 25, 1995 filed a pleading wherein he requested, inter alia, custody of Christeena, a trial and listed Mr. and Mrs. Kline as defendants in the caption. No steps for formal joinder or intervention of Mr. and Mrs. Kline were ever taken by any of the parties. Mr. and Mrs. Kline also, through counsel, independently requested a custody trial. That trial commenced on November 30, 1995 but could not be completed that date. On said date, this court entered an order confirming temporary primary physical custody of Christeena with Mr. and Mrs. Kline, and set forth limited supervised visitation rights of father. The proceedings were reconvened on January 24, 1996 at which time testimony was completed. At no time during any of the proceedings before this judge did defendant Amy Shelenberger appear, nor was she represented by counsel.

In this case the maternal grandparents are requesting primary physical custody as against the natural father and as such the maternal grandparents are designated as third parties. It is well recognized that the law in Pennsylvania provides the appropriate manner for a third party to obtain child custody is through a dependency proceeding. 42 Pa.C.S. §6301 et seq. Absent

a prima facie right to custody, a third party lacks standing to seek custody against the natural parent. Our appellate courts have refused to give standing to third parties under these types of circumstances without a clear and convincing showing that the child is not receiving proper parental care. *Gradwell v. Strausser,* 416 Pa. Super. 118, 610 A.2d 999 (1992).

The exception to the strict third party lack of standing preclusion is where the third party stands in loco parentis: in other words where that party has assumed obligations that are incident to the parental relationship. *Gradwell, supra.* In reviewing issues of in loco parentis, the courts have looked favorably upon and have not minimized the stability factor between the child and the third party. *Rosado v. Diaz,* 425 Pa. Super. 155, 624 A.2d 193 (1993). In *Diaz,* the Superior Court defined the phrase in loco parentis as a "person who puts himself . . . in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties." *Diaz, supra* at 161, 624 A.2d at 196, quoting *Commonwealth ex rel Morgan v. Smith,* 429 Pa. 561, 565, 241 A.2d 531, 533 (1968).

In this case since September 27, 1994, Mr. and Mrs. Kline have acted as the parents of Christeena. Testimony showed from that time continuing to date, Christeena has stayed with Mr. and Mrs. Kline and that they have provided Christeena with food, clothing, shelter, proper direction, schooling, recreation and generally have met all of the responsibilities one should properly accept in being a child's parent. Mr. and Mrs. Kline did this of their own free will notwithstanding father's lengthy period of incarceration due to civil and criminal matters

as described above, and the mother's apparent disinterest in the welfare and care of Christeena. As a result, this court finds that Mr. and Mrs. Kline are in loco parentis to Christeena and have standing to pursue their claim for primary physical custody.

The controlling question of the court in this and in any custody case is the best interest of the child. All other considerations are deemed subordinate to the child's physical, intellectual, moral, emotional and spiritual well-being. *K.L.H. v. G.D.H.,* 318 Pa. Super. 330, 464 A.2d 1368 (1983); *Gerber v. Gerber,* 337 Pa. Super. 580, 487 A.2d 413 (1985); *Mahoney v. Mahoney,* 354 Pa. Super. 585, 512 A.2d 694 (1986).

The court must also take into account the fact that here third parties are requesting primary physical custody against a parent. Previously, our appellate courts had held that there was a presumption per se that a parent had a prima facie right to custody of his children which right "may be forfeited if convincing reasons appear that the best interests of the child will be served by awarding custody to someone else." *Ellerbe v. Hooks,* 490 Pa. 363, 367, 416 A.2d 512, 513 (1980). However, our Supreme Court in the recent case of *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995) eliminated the presumption per se and held that custody be determined by a preponderance of the evidence, weighing parenthood as a strong factor for consideration. "Thus there is no single overriding factor; rather, courts should consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of a child. Parenthood, though not paramount, will always be a factor of significant weight." *Rowles, supra* at 448, 668 A.2d at 128.

In this case there can be no doubt that the best interests of Christeena dictate that custody be granted to Mr.

and Mrs. Kline. Mrs. Kline's testimony showed that their home located in Sandy Township is more than suitable for Christeena's care, with the child having her own bedroom and receiving the love and attention she needs for her proper upbringing. She also testified to the difficulties that she and her husband experienced in June 1994 when they were denied their court ordered partial custody with Christeena. Following Christeena's return, her testimony showed that Christeena's hair had been shaved off, she was very thin and extremely socially withdrawn. The child's intellectual level was depressed as she exhibited little spontaneity or self-confidence. She did not have the ability to color with crayons or zip her coat, which are simple tasks that a normally developed child of Christeena's age should be able to accomplish. The repressing effect that father's period of custody had on Christeena as well as the positive effect on Christeena from Mr. and Mrs. Kline's care was also confirmed by Peggy Gallaher, the child's kindergarten teacher. Ms. Gallaher testified to the substantial improvement in all areas of Christeena's development, emotional outlook and self-confidence which the child exhibited the longer she continued to live in the stable care of Mr. and Mrs. Kline. According to Ms. Gallaher, in her eight years of experience of teaching kindergarten she never had a child which had arrived at her class at a lower developmental level.

Dr. Raymond W. Francis, a psychologist, also testified on behalf of Mr. and Mrs. Kline. Dr. Francis saw Christeena and Mr. and Mrs. Kline on April 8 and August 18, 1995 and found Christeena to be sincerely happy, with solid affection for her grandparents. Dr. Francis' evaluation and testing of Christeena resulted in his opinion that Christeena "needs to have consistent understanding in a highly structured environment which

is warm and reassuring to nurture continued emotional and social growth." Petitioner's exhibit "1," page 3. Dr. Francis also found both Mr. and Mrs. Kline to be perfectly capable of caring for Christeena, providing solid supervision, the necessary appropriate care and having the resources to accomplish this task. In short, it was Dr. Francis' recommendation that Mr. and Mrs. Kline were appropriately mature, exhibited strong personal values and "are in a position to provide for Christeena's physical needs as well as her intellectual, physical and spiritual needs." Petitioner's exhibit "1," page 6.

Father also testified as to his long and somewhat tumultuous relationship with Christeena's mother. He indicated that he never intended to hide Christeena from Mr. and Mrs. Kline and had only pleaded guilty to the criminal offense in order to get out of jail. He also testified that he had shaved her head due to her recurring head lice. He noted that he was currently unemployed but hoped that he would have work at some time in the spring 1996. He admitted that at the current time he was not able to give his daughter the care and attention that she deserved and that he knew Mr. and Mrs. Kline could properly care for Christeena. Father's residence was described as an unfinished plank house without operating sewer and water due to various piping that needed to be replaced. Father specifically admitted that he was not in any position to be the custodial parent at this time but placed his hopes on the future after he hopefully obtained full-time employment and an apartment.

Based upon applying the standard as set forth in the *Rowles* case, and considering the evidence upon a preponderance of the evidence, from the testimony

as presented on behalf of Mr. and Mrs. Kline as well as that of the father, there can be no doubt that Mr. and Mrs. Kline should be granted primary physical custody of Christeena.

## ORDER

And now, February 21, 1996, it is the order of this court that Emery A. Kline and Theo O. Kline, maternal grandparents, be and are hereby awarded primary physical custody of their granddaughter Christeena M. Hudzy. Michael G. Hudzy, natural father, shall continue to have supervised visitation with Christeena under the terms and conditions of this court's order of November 30, 1995, until such time as this court should order otherwise.