J-A18026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| H.P.T | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.A.R. | : | |
| | : | |
| Appellant | : | No. 226 WDA 2020 |

Appeal from the Order Entered February 5, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD08-7200-001

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 18, 2020**

Appellant, R.A.R. ("Mother") appeals from the February 5, 2020 Order that found Mother in contempt of the existing custody Order. Upon review, we affirm.

The Honorable Alan Hertzberg, who has presided over this case since its inception, has provided a thorough and accurate procedural and factual history, which we adopt for purposes of this appeal. Trial Ct. Op., filed 3/19/20, at 1-9. Relevant to this appeal, Mother and H.P.T. ("Father"), who are parents to 12-year-old S.T. ("Child"), have been involved in a contentious custody dispute for the last 10 years. Mother, a dentist, and Father, a surgeon, married in October 2005 and separated multiple times until their final separation in January 2008 when Child was less than a year old.[1] Father

_____

[1] The court entered the parties' final Divorce Decree on September 8, 2010.

filed a Complaint in Custody and the trial court ordered both parties to submit to mental health evaluations. The examining psychiatrist diagnosed Mother with general anxiety disorder, obsessive-compulsive disorder, and narcissistic personality traits, and concluded that Father did not have a psychiatric diagnosis.

After a six-day trial, the trial court awarded the parents shared legal and physical custody of Child. The October 28, 2009 Order[2] ("Custody Order") directed parties to follow a "5-5-2-2" schedule, where in repetitive two-week cycles, Mother has physical custody of Child for 5 days, Father has physical custody of Child for 5 days, and then Mother and Father both have physical custody of Child for 2 days, respectively. The trial court also ordered Mother to continue medication and psychotherapy, as recommended by her physicians. *See* Order, 10/28/2009.

Following a hearing in December 2013 on Petitions for Contempt filed by both parties, the trial court modified the Custody Order to include a requirement that Mother "be examined by a psychiatrist by March 31, 2014 and by March 31 of each year thereafter with written proof promptly provided to Father after each such examination." Order, 12/23/13.

Over the next five years, the parties required court intervention on various custody related issues, but continued to share physical custody of Child on the 5-5-2-2 schedule. During this time, Father married J.L.T.

---

[2] The court dated the Order October 27, 2009, but did not docket the Order until October 28, 2009.

("Stepmother") and, in September 2014, Father had a second child with Stepmother. Mother also remarried, but she is currently divorced.

In August 2018, after a two-day hearing, the trial court found Mother in contempt for withholding custody from Father after then-11-year-old Child told Mother he was afraid of Father when Father attempted to discipline him. The trial court heard evidence, *inter alia*, of a recorded telephone conversation between Father and Child in which Mother was whispering instructions to Child, and ultimately found Child's testimony to be coached by Mother and not credible. The trial court ordered Mother to pay Father's counsel fees and provide Father with 21 days of make-up physical custody. **See** Order, 8/28/18.

By January 2019, after Father and Child experienced a marked improvement in their relationship, they ceased attending ongoing family therapy by agreement of Father, Child, and the therapist.

In August 2019, Mother again withheld custody from Father after Child told Mother he was afraid of Father when Father attempted to discipline him. The facts of the triggering incident are largely undisputed. Specifically, late in the evening on August 18, 2019, Child was in his bedroom laying down on the top bunkbed in his underwear, which he usually slept in. Father entered Child's bedroom and the two got into an argument because Child lied to Father about overdue library books and resulting fines. Stepmother entered the room as the argument escalated; Father informed Child that Child would have to pay for the fines and Child told Father to "shut up." Father, who had never

- 3 -

used physical discipline on Child, began to climb the bunkbed ladder and told Child that he was going to kill Child. Stepmother told Father to stop and held him back while Child jumped from bed and ran next door to the neighbor's house. While at the neighbor's home, Child used the neighbor's telephone to make a call. Stepmother and Father immediately went to neighbor's house to talk to Child, and Child returned home voluntarily.

The next day after work, Father and Child made up; Father hugged and kissed Child and told Child "I love you," and Child apologized to Father. Father disciplined Child by taking away his electronics. Father, Stepmom, Child, and Child's little brother all attended a baseball game together that evening.

The next morning, Child attended a scheduled dentist appointment where Father, Stepmother, and Mother were all present. The next two nights, Father, Child, and Child's little brother had a "camp-out" in the living room while Stepmother was traveling for work.

Child returned to Mother's custody four days after the argument, on August 22, 2019. That evening, during Child's scheduled phone call with Father, Child told Father that he was scared of Father and did not want to return to Father's home. Child was supposed to return to Father's care the next evening. Mother withheld custody.

On August 26, 2019, Father served Mother with an Emergency Petition for Enforcement, Contempt, Counsel Fees, and Other Appropriate Sanctions.[3] On August 29, 2019, Mother served Father with a Motion to Suspend Custody and for Contempt.[4]

On September 17, 2019, after meeting with counsel, the trial court ordered Father and Child to attend a counseling session within 10 days and resume the existing custody schedule within 20 days.

On September 24, 2019, Mother filed a Petition for Modification of Custody, requesting sole legal custody and primary physical custody of Child. Mother discontinued the Petition on November 22, 2019.

On December 4, 2019, the trial court held an evidentiary hearing on Father's Petition for Contempt and Mother's Motion to Suspend Custody, but parties could not complete all of the testimony. On December 5, 2019, the trial court once again ordered Father and Child to attend a counseling session within 10 days and resume the existing custody schedule within 20 days. Child resumed therapy, and spent a weekend with Father around the Christmas holiday, but the regular custody schedule did not resume.

---

[3] Father's Emergency Petition is dated August 26, 2019, and the trial court avers that it was served on that date; however, the court did not docket the Emergency Petition until September 19, 2019. *See* Trial Ct. Op. at 8.

[4] Mother's Motion is dated August 29, 2019, and both the trial court and Mother aver that it was served on that date; however, the court did not docket the Emergency Petition until September 19, 2019. *See* Trial Ct. Op. at 8; Mother's Br. at 24.

On February 3, 2020, the trial court heard additional testimony on Father's Petition and Mother's Motion. During the hearing, the trial court heard testimony from Father; Mother; Child; Stepmother; Shirley Mitchell, a family therapist ("Therapist"); M.D., Child's nanny ("Nanny"); and M.P., the neighbor.

On February 4, 2020, the trial court found Mother in contempt of both the Custody Order and the December 20, 2013 Order that directed Mother to obtain a psychiatric evaluation every year and provide written proof to Father. The trial court ordered Father and Child to begin reunification counseling forthwith. The trial court ordered Mother, *inter alia*, to follow the Custody Order schedule to begin within 60 days, provide Father with 60 days of make-up custody, pay $4,000 of Father's counsel fees, and provide Father proof of Mother's annual psychiatric evaluations from 2014-2020 within 30 days.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

1. Whether the trial court abused its discretion and committed an error of law when it held Mother in contempt for withholding custody after Father threatened to kill [] Child and [T]herapist recommended supervised custody for Father.

2. Whether the trial court abused its discretion and erred as a matter of law by awarding Father make-up custody time and ordering Mother to pay Father's counsel fees.

3. Whether the trial court abused its discretion and committed an error of law when it held Mother in contempt of the Custody Order while still suspending Father's custody for two (2)

months and ordering reunification counseling for Father and []
Child.

4. Whether the trial court abused its discretion and committed an error of law by setting an arbitrary date for Father to resume custody without any reference to success of the reunification therapy, therapeutic goals, or what needed to be accomplished before custody resumed.

5. Whether the trial court abused its discretion and erred as a matter of law by holding Mother in contempt of the December 20, 2013 Order where Mother provided proof of completion of psychiatric examinations.

Mother's Br. at 3-4 (reordered for ease of disposition; some capitalization omitted).

It is well settled that "each court is the exclusive judge of contempts against its process." *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (citation omitted). We review a trial court's finding on a contempt petition for a clear abuse of discretion, and must place great reliance on the sound discretion of the trial judge. *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012). A trial court abuses its discretion if it "overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record[.]" *N.A.M. v. M.P.W.*, 168 A.3d 256, 261 (Pa. Super. 2017) (citation omitted). Importantly, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Harcar v. Harcar*, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

- 7 -

The Custody Act provides that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S. § 5323(g)(1). "In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence." **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). To sustain a contempt finding, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Id.** (citation omitted).

In her first two issues, Mother avers that Father did not present adequate evidence to hold her in contempt of the Custody Order and, therefore, the trial court erred when it ordered Mother to provide Father with make-up custody time and pay Father's counsel fees. Mother's Br. at 23, 60. Mother concedes that she failed to relinquish custody to Father as required by the Custody Order. **Id**. at 23. However, she argues that she did not act with the requisite wrongful intent because once Child told her about the incident with Father, she could not "in good conscience return [] Child to Father's care without the incident being addressed." **Id**. Mother contends that the trial court abused its discretion when it disregarded "nearly uncontradicted" evidence that Child was genuinely afraid of Father, including evidence that Therapist recommended supervised visitation, and that the trial court failed to consider that Mother acted prudently in seeking court and therapeutic

intervention.  *Id.* at 20.  Finally, Mother argues that the trial court abused its discretion when it considered testimony and evidence from the initial custody hearing in 2009 and a contempt proceeding in 2018 to evaluate Mother's wrongful intent in 2019.  *Id*. at 25.  Mother's arguments fail.

Instantly, the trial court did not find Mother and Child's testimony to be credible that Child was fearful of Father.  Trial Ct. Op. at 8, 10.  Instead, the trial court credited the testimony of both Father and Nanny that Mother influences Child to say things, and the testimony of Father, Stepmother, and Nanny that Child did not exhibit fear of Father in the days after the incident.  Trial Ct. Op. at 9-11.

The trial court opined:

[T]here was abundant evidence, both direct and circumstantial, that Mother's noncompliance was volitional and that she acted with wrongful intent.  When Father called [Child] on August 22, 2019 and [Child] told Father he did not want to go to Father's home, Father credibly testified he heard Mother whispering to [Child].  During the August[] 2018 contempt hearing, I personally listened to Mother doing this same thing in the early April 2018 tape-recorded conversation.  [Nanny], who has cared for [Child] for ten years, credibly testified that [Child] lied when he said he was afraid of Father due to "a lot of influence from his mom to say these things[.]"

This is volitional behavior by Mother with the wrongful intent to obtain Father's custody time.  On August 18, 2019, when [Child] jumped from the bed and went to the neighbor's home, the "violence" he avoided, being smacked or spanked, was not

unreasonable.[5]   Furthermore, [Child] showed no fear of Father afterwards.

Trial Ct. Op. at 9-10.

Moreover, the record belies Mother's claim that Therapist recommended to the court that Father and Child have supervised visitation. Therapist testified that she discussed supervised visitation with Child as an option to make him feel comfortable, but clarified that, in her opinion, supervised visitation was not necessary, she was not concerned about overnight visitation, and that it was in Child's best interest to continue to have contact with Father. N.T., 2/3/20, at 69-71.

The evidence of record supports the trial court's findings. We decline to usurp the credibility determinations of the trial court or reweigh the evidence. Accordingly, we find no abuse of discretion in the trial court's finding of contempt and order for Mother to provide Father with make-up custody time and pay Father's counsel costs.

Even if the trial court had found Child and Mother's testimony credible that Child was fearful of Father, Mother's alleged fear for her Child's safety was not a valid reason for Mother to withhold custody without court intervention. This Court rejected a similar argument in *Luminella v. Marcocci*, 814 A.2d 711 (Pa. Super. 2002), when a mother, who withheld

---

[5] The trial court also emphasizes that Father subsequently agreed with Therapist to remove Child's electronics to discipline him instead of physical force, and the trial court explained, "Whether reasonable or not, I do not endorse or encourage [Father] or any parent to use physical force to discipline a child." Trial Ct. Op. at 10 n.5.

custody from her children's father in violation of an existing custody order, argued that she should not be held in contempt because she feared for her children's safety. *Id*. at 719. In rejecting the mother's argument, this Court concluded, "[t]o accept [this] argument is to accept anarchy." *Id.* This Court was persuaded in part by the fact that the mother did not pursue modifying the existing custody order until the father filed a contempt petition, and held that a parent "is not permitted to ignore the order and unilaterally institute measures she feels appropriate instead of the order." *Id*.

In its Opinion, the trial court also highlighted that, like the parent in *Luminella*, Mother withheld custody from Father and did not attempt to modify the custody order until **after** Father filed a Petition for Contempt, lending more support to the trial court's finding of contempt. The trial court concluded that Mother may not "unilaterally institute measures she feels appropriate instead of the [O]rder." Trial Ct. Op. at 11 (quoting *Luminella*, 814 A.2d at 719). We agree.

Finally, Mother contends that the trial court erred when it considered testimony and evidence regarding Mother's psychiatric diagnosis from the initial custody proceeding in 2009, and the recorded evidence of Mother whispering in the background of a phone conversation between Child and Father that Father had presented during the previous 2018 contempt proceeding. Mother avers that the trial court abused its discretion when it used "facts not of record" to determine whether Mother exhibit wrongful intent in her most recent violation of the Custody Order. *Id* at 25 (citing *Eck v. Eck*,

475 A.2d 825, 827 (Pa. Super. 1984), and *In re Custody of Frank*, 423 A.2d 1229, 1237 (Pa. Super. 1980)). We find no abuse of discretion.

This Court has held that a parent's past conduct is an appropriate consideration when it has an ongoing negative effect on a child. *Vicki N. v. Josephine N.*, 649 A.2d 709, 712 (Pa. Super. 1994). "It would be patently ridiculous to say . . . that a court must blind itself to all that a parent has done prior to the custody hearing. We do not live our lives in distinct and unconnected periods of time, with the past importing nothing for the present, nor the present for the future." *Snarski v. Krincek*, 538 A.2d 1348, 1360 (Pa. Super. 1988).

As discussed above, the credible testimony of Father, Stepmother, and Nanny that Father presented during the instant 2019-2020 contempt hearings, standing alone, was sufficient to sustain a finding of contempt. Moreover, contrary to Mother's assertion, the past evidence that Mother challenges *is* part of the record as a whole. Based on the above case law, we conclude the trial court properly exercised its discretion in considering the past conduct.

In her third issue, Mother avers that the trial court abused its discretion when it held Mother in contempt of the Custody Order for withholding custody, and then concluded that an immediate return to Father's custody would not be in Child's best interest. Mother's Br. at 50. Mother argues that the trial court's 60-day suspension of custody and the requirement that reunification counseling take place demonstrates that she was acting in Child's best interest

- 12 -

when she withheld custody in violation of the Custody Order and should not be held in contempt. *Id*.

Mother mischaracterizes the trial court's disposition. She assumes that Father's actions precipitated the trial court's Order for reunification counseling prior to Child returning to Father's physical custody. On the contrary, as the trial court explained, "it was Mother's contemptuous behavior that created the need for reunification therapy. Thus, there is no inconsistency in [the court's] findings, no error and no abuse of discretion." Trial Ct. Op. at 12. We agree and find no abuse of discretion.

In her next issue, Mother asserts that the trial court abused its discretion when it set an "arbitrary" date for Father to resume custody without any requirement that reunification counseling was successful or that Father and Child achieve therapeutic goals prior to reunification. Mother's Br. at 52.

Mother fails to cite any controlling legal authority to support her argument that the trial court should have based its custody disposition on a therapeutic goal or recommendation. Moreover, the trial court did not pick an "arbitrary" date for reunification; rather, the court based its timeline on (1) Father's history of successfully resuming custody of Child within 10 to 20 days after a counselling session; and (2) the fact that Father and Child might need more time to facilitate a change in family counselors. *See* Trial Ct. Op. at 13. Accordingly, this issue lacks merit.

Finally, Mother argues that the trial court abused its discretion when it found her in contempt of the December 23, 2013 Order which required her to

submit to annual psychiatric examinations and provide written proof to Father. Mother's Br. at 58. Mother first contends that Father's testimony at trial indicated that Mother complied in 2013 or 2014, and 2018, and, therefore, the trial court should not have held Mother in contempt. *Id*. at 58-59. Mother then argues, in contradiction, that Father's testimony is not credible because it is based on "vague recollection" and "contradicts" the allegation in his Emergency Petition that Mother had provided no proof of compliance. *Id*. Mother presents no logical argument to address her abuse of discretion claim. Moreover, the trial court found Father's testimony—that Mother failed to provide him with written proof that she submitted to a psychiatric evaluation in 2014, 2015, 2016, 2017, and 2019—to be credible. Trial Ct. Op. at 13-14 (citing N.T. 12/3/19 at 37-38). We decline to usurp the trial court's credibility determinations. We, therefore, conclude this issue merits no relief.

In conclusion, the trial court did not abuse its discretion when it found Mother in contempt of the Custody Order and the December 23, 2013 Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/18/2020